UNITED STATES of America, Appellee,

v.

**Onel COLON, Defendant–Appellant,**

**Alvarado, et ano., Defendants.**

**No. 565, Docket 88–1253.**

United States Court of Appeals, Second Circuit.

Argued Dec. 15, 1988.

Decided July 14, 1989.

---

Leonard J. Levenson, New York City, for defendant-appellant.

Daniel A. Nardello, Asst. U.S. Atty., S.D. N.Y., New York City (Rudolph W. Giuliani, U.S. Atty. S.D.N.Y., Linda Imes, Asst. U.S. Atty., S.D.N.Y., New York City, of counsel), for appellee.

Before MESKILL, PIERCE and MINER, Circuit Judges.

MESKILL, Circuit Judge:

Defendant-appellant Onel Colon appeals from a judgment of conviction entered in the United States District Court for the Southern District of New York, Metzner, J. A jury found Colon guilty of one count of distributing heroin within 1,000 feet of a public school in violation of 18 U.S.C. § 2 (1982) and 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(C) (1982 & Supp. V 1987), 845a(a)

(Supp. V 1987). In this appeal, Colon argues that evidence of his similar acts was erroneously admitted. We reverse the judgment of the district court.

## BACKGROUND

At trial, the government offered evidence to prove the following. On July 16, 1987, Colon was standing in front of 703 Ninth Avenue, between 48th and 49th Streets, in New York City. That area, a frequent site of illegal drug selling activity, was on that day the target of an undercover operation of the New York City Police Department. With two other detectives observing and backup police officers parked nearby, Detective Rodney White, working undercover, approached Colon in an effort to buy drugs. White asked Colon "if he had any D," "D" being a street name for heroin. Colon responded by telling White to walk to 49th Street and wait. As White was about to follow these instructions, Colon pointed and said "Wait over there." Detective White looked in the direction Colon was pointing and saw one Luis Alvarado nearby, observing Colon and White. Alvarado motioned with his head, a gesture White read as an invitation to approach him. Alvarado led White behind a truck parked in front of 715 Ninth Avenue. Without any statement by White, Alvarado simply said "How many?" White responded that he wanted two. Alvarado then removed two glassine envelopes containing heroin from inside his pants and gave them to White. In return, White gave Alvarado $30 in pre-recorded money and left the scene.

After returning to his car, Detective White alerted the other detectives and backup officers by radio that a buy had been made, and he relayed descriptions of Colon and Alvarado. The backup officers then moved in and arrested Colon in front of 703 Ninth Avenue and Alvarado in a store across the street. Alvarado was in possession of $25 of the pre-recorded money. With the two men in the custody of the officers, Detective White drove by in his car and confirmed by radio that the officers had arrested the right men.

As explained in testimony elicited by the government at trial, there are two principal ways heroin is sold on the streets of New York City. The first method involves an individual seller carrying heroin. In exchange for money, the seller simply gives the heroin to the buyer. The second method involves two individuals, one referred to as the "steerer." Under this scenario, one wishing to buy approaches the steerer, who makes a determination as to whether a sale will be made. If he or she decides to make the sale, the steerer sends the buyer to the second individual, who actually possesses the heroin and makes the sale. The government prosecuted Colon on the theory that he aided and abetted the sale of the heroin by acting as a steerer. Alvarado, who was indicted along with Colon, was a fugitive at the time of trial.

The only issue in this appeal concerns the admission of testimony against Colon concerning two prior occasions in which Colon participated in the sale of heroin. In determining whether the prior bad acts evidence was admitted properly, we must examine Colon's defense theories at trial.

On March 25, 1988, at a brief pretrial conference before Judge Metzner, Leonard Levenson, counsel for Colon, referring to the arrest scene, stated that Colon "happened to be there. Someone approached him and asked him, do you know where you can buy drugs, and he said down the block someplace, I guess. That doesn't make him a steerer. He doesn't know Alvarado, he never knew Alvarado in his life and he maintains his innocence." Under this account of events, Colon's response to Detective White had not been a "steer" to Alvarado, but instead the innocent statement of a bystander that drugs were sold down the street somewhere.

On April 7, 1988, the government filed with the district court a memorandum in support of the admissibility of testimony concerning Colon's two prior acts. The government argued that the evidence was admissible under Fed.R.Evid. 404(b) to establish Colon's intent and knowledge. The government stated that it was clear from

the anticipated defense that intent and knowledge would be disputed in the case.

On April 11, just prior to the commencement of trial, the court heard counsel argue the admissibility of the similar acts testimony. The government stated its anticipation, based on the position taken by Attorney Levenson at the March 25 pretrial hearing, that Colon would dispute issues of intent and knowledge. The government repeated its position that the similar acts testimony would therefore be admissible under the rules of evidence. Counsel for Colon, also presenting a written submission, stated to the court:

> MR. LEVENSON: Your Honor, I am somewhat confused by what aspect of intent the government hope[s] to prove by introducing this prior conviction. The issue as I see it in this case is whether or not the defendant knew of where he was directing [the] undercover officer[,] to Alvarado or just suggesting that he might be able to get some drugs somewhere down the street.
>
> If the government proves that he knew Alvarado and was in fact directing the undercover officer to Alvarado specifically in saying that you can buy the drugs from him, then I will acknowledge that he intended to violate the federal narcotics law and intended to aid in the sale of drugs. That is not the issue.
>
> The issue is, did he know Alvarado and I have a dozen cases which I cited—
>
> THE COURT: Suppose he didn't know Alvarado but [he] knew he was [a] fellow selling drugs. Most of these fellows only know Jack and Jake.
>
> MR. LEVENSON: I am not saying that, but I mean he didn't know him personally and wasn't pointing directly to Alvarado. He was just pointing in the general direction down the block.
>
> THE COURT: I will let it in.

The court then explained that it would admit the evidence for the purpose of showing intent.

Shortly thereafter, the issue was examined again. Counsel for Colon stated his position that the government should not be permitted to mention the similar acts testimony in its opening "on the theory that the issues have not yet been framed, and that it is possible that defendant may allege, may assert that there has not even been criminal action on his part, so that intent is not really an issue or knowledge is not really an issue." The court noted ambiguity in Colon's defense theory, saying to defense counsel, "if you can't make your mind up before the opening, I have to take the position that the issue will be in the case." The court continued, "[i]s he denying that he was there? You don't even know from what you told me.... You really don't even know what he is going to tell you." After consulting with Colon, defense counsel stated:

> I am advised that the defendant's version of what happened was that he was out on the street, was never approached by an undercover officer, was never asked by an undercover officer where he could find drugs, engaged in no contacts with the undercover officer, engaged in no contact with Mr. Alvarado.
>
> If that is the version of the incident that defendant is going to persist in, and he tells me now that that is his version of what happened, I don't see where intent is an issue.

The court summarily rejected defense counsel's argument, and permitted the government to include, in its opening, reference to Colon's prior involvement in heroin sales.

On the second day of trial, well into the government's case but before evidence of Colon's similar acts was offered, the court again heard counsel on the issue. The court announced that the evidence was admissible under Rule 404(b) and specifically stated that the requirements of Fed.R.Evid. 403 were satisfied. Defense counsel again argued that intent and knowledge were not in dispute.

> MR. LEVENSON: Your Honor, you understand of course that the effect of letting these two prior dealings come in is to have the jury believe that since he [was] a dealer in narcotics in the past, he must be dealing in narcotics now.
>
> THE COURT: That is the argument made every time prior similar acts are

offered, Mr. Levenson. And if that were true they would never come in.

MR. LEVENSON: They would, your Honor. There are specific cases when they come in. If a person says, "I didn't know these bills were counterfeit," you can bring in a prior conviction for counterfeiting to show that the man knows something about counterfeit bills, that it isn't an accident.

THE COURT: You told me originally in this case that this man's position in this case was when he was asked he waved down the street, not directly to Alvarado, but he waved down the street as to where the stuff could be gotten.

MR. LEVENSON: That's correct.

THE COURT: Now yesterday you tell me a different story, that he is going to have a different approach to this. Yesterday afternoon, you told me a different story.

MR. LEVENSON: That he doesn't remember whether or not he was ever approached by this man.

THE COURT: You told me yesterday on the record, I think it is, that he never did. I said on the record with this sort of a defense, what's going to happen I can't tell. Because I can't rely on your representation, not because of you, but because you told me your client was uncooperative.

MR. LEVENSON: My position, of course, is either situation.

THE COURT: I have made my ruling.

During its case-in-chief, the government called as its fourth and final witness New York City Police Officer Pedro Foruria. Officer Foruria testified about the two prior incidents involving Colon. On June 5, 1987, about six weeks before the alleged occurrence of the crime charged in this case, Foruria approached Colon in front of 703 Ninth Avenue and asked him about the availability of heroin. Following discussions also involving another individual, Foruria purchased from Colon ten glassine envelopes of heroin. Colon was not arrest-

ed at that time. Following the testimony concerning this incident, the court gave the jury an instruction, stating that the evidence could not be considered as a reflection on Colon's character or propensity to commit the charged crime, but rather only as evidence of intent, knowledge or motive.

Officer Foruria proceeded to testify that on June 9, again in the vicinity of 48th Street and Ninth Avenue, he approached Colon about buying heroin. After some discussion, Colon left briefly, only to return with another individual, apparently Colon's son. Officer Foruria subsequently purchased thirty glassine envelopes of heroin from the younger Colon. Again, following this testimony the court instructed the jury that testimony about this incident was only offered to show intent, knowledge and motive, and not as a reflection on Colon's character or propensity to commit the charged crime.

After the government rested its case, Colon testified through an interpreter. Colon acknowledged that he had been on the street near 703 Ninth Avenue at the time of his arrest, as he had just left work at Ninth Avenue and 48th Street. He stated that he lived at that time on 48th Street, near Ninth Avenue. Colon claimed to have no memory as to whether he had talked to Detective White. Nevertheless, he acknowledged, in response to leading questions on cross-examination, the possibility that he might have been approached by White or asked about buying drugs.

Colon was convicted. In this appeal, he argues that the district court committed reversible error by admitting the evidence of his prior participation in heroin sales. Colon also argues that the evidence should not have been mentioned during the government's opening or admitted during the government's case-in-chief. The government contends that because the evidence was admissible to prove Colon's intent, its use of the evidence was proper.[1]

---

1. Our discussion hereinafter focuses only on the use of the prior acts evidence to prove intent. We do not separately address the position cited but not discussed by the government that admis-
sion of the evidence was proper to prove knowledge. We see no basis for reaching a different result here based on any distinctions between the issues of knowledge and intent.

## DISCUSSION

### A. *Admissibility of the Other Acts Evidence*

■ We share appellant's concern about the danger of unfair prejudice associated with the use of similar acts evidence. In determining whether to allow admission of such evidence, district courts must exercise great care to ensure that juries are not permitted to conclude that because a defendant has committed a similar crime before, he or she therefore has a criminal propensity sufficient to justify conviction in the case at hand. *See United States v. Mohel*, 604 F.2d 748, 751 (2d Cir.1979) (quoting *United States v. O'Connor*, 580 F.2d 38, 43 (2d Cir.1978), and *United States v. Manafzadeh*, 592 F.2d 81, 86 (2d Cir.1979)). Upon careful review of the record, we conclude that the district court in this case did not safeguard against this danger, and the judgment of conviction must be reversed.

Fed.R.Evid. 404(b) provides that:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

"Under the 'inclusionary' or 'positive' approach to other acts evidence that controls in this Circuit, other acts or crimes are admissible under Rule 404(b) to prove matters other than the defendant's criminal propensity." *United States v. Ortiz*, 857 F.2d 900, 903 (2d Cir.1988), *cert. denied*, — U.S. —, 109 S.Ct. 1352, 103 L.Ed.2d 820 (1989).

■ The standards by which a district court is to assess the admissibility of other acts evidence under Rule 404(b) are now well established. *See, e.g., Huddleston v. United States*, 485 U.S. 681, —, 108 S.Ct. 1496, 1501–02, 99 L.Ed.2d 771 (1988). First, the trial court must determine whether the evidence is offered for a proper purpose, namely, a purpose other than to prove the defendant's bad character or criminal propensity. Examples of such proper purposes include those listed specifically in Rule 404(b), among these being intent. If the evidence is offered for such a proper purpose, the district court then must determine whether "[t]he offered evidence [is] relevant, per Rules 401 and 402, to an issue in the case, and [whether] the evidence ... satisf[ies] the probative-prejudice balancing test of Fed.R.Evid. 403." *Ortiz*, 857 F.2d at 903. Finally, if requested to do so, the court must give an appropriate limiting instruction to the jury. *See Huddleston*, 485 U.S. at —, 108 S.Ct. at 1501–02; *Ortiz*, 857 F.2d at 903.

The government contends that the district court correctly admitted the testimony as evidence of Colon's intent, a proper purpose under Rule 404(b). This appeal raises the question whether the similar acts evidence was relevant to an issue in this case. Colon's argument is that the district court erred in admitting the evidence because Colon's state of mind was not truly in dispute.

Strictly speaking, Colon's plea of not guilty to the charge that he aided and abetted Alvarado's sale of heroin put his state of mind in dispute, as the government bore the burden of proving that Colon had the specific intent that his actions bring about the sale. *See United States v. Aiello*, 864 F.2d 257, 262–63 (2d Cir.1988) (quoting *United States v. Wiley*, 846 F.2d 150, 154 (2d Cir.1988) (in turn quoting *United States v. Zambrano*, 776 F.2d 1091, 1097 (2d Cir.1985))). Nevertheless, in some circumstances, the nature of a defense put forth by the defendant may reveal that "[k]nowledge and intent, while technically at issue, [are] not really in dispute." *United States v. Benedetto*, 571 F.2d 1246, 1249 (2d Cir.1978). In some cases, the defendant may specifically offer to stipulate to an issue and thereby remove it from the case. *See Mohel*, 604 F.2d at 752–54; *Manafzadeh*, 592 F.2d at 87.

As we stated in *United States v. Figueroa*, 618 F.2d 934, 942 (2d Cir.1980):

Whether an issue remains sufficiently in dispute for similar acts evidence to be material and hence admissible, unless the prejudicial effect of the evidence sub-

stantially outweighs its probative value, depends not on the form of words used by counsel but on the consequences that the trial court may properly attach to those words.

Reaffirming this approach in *Ortiz*, we recognized that

a defendant may completely forestall the admission of [the] other act evidence on the issue of intent by

express[ing] a decision not to dispute that issue with sufficient clarity that the trial court will be justified (a) in sustaining objection to any subsequent cross-examination or jury argument that seeks to raise the issue and (b) in charging the jury that if they find all the other elements established beyond a reasonable doubt, they can resolve the issue against the defendant because it is not disputed.

*Ortiz*, 857 F.2d at 903–04 (quoting *Figueroa*, 618 F.2d at 942); *see also Mohel*, 604 F.2d at 753–54. We thus must consider whether, either by putting forward a particular theory of defense or by specifically offering to stipulate, Colon removed the issue of intent from the case.

In *Manafzadeh*, 592 F.2d 81, upon which Colon primarily relies, we reversed convictions on two counts of unlawfully transporting or causing to be transported falsely made checks. We held that evidence of subsequent crimes was erroneously admitted to prove intent because intent had not truly been in dispute. As we noted, "Manafzadeh's defense was not that he had innocently or mistakenly participated in the preparation or deposit of the ... checks.... His defense was that he had never been involved in the creation or negotiation of these fraudulent checks at all." *Id.* at 85. Moreover, the defendant repeatedly offered to stipulate to intent if the jury found that he had participated in the creation or deposit of the checks. *Id.* Thus, we concluded, "intent was not in dispute and any doubt about its nonexistence as an issue was dispelled by the offer of the defendant to stipulate to the existence of the requisite intent if the other

elements of the offense should be found." *Id.* at 87.

In *Ortiz*, a defendant was charged with possession of heroin with intent to distribute. We found that a "mistaken identity" defense by Ortiz claiming that she had never possessed any heroin, had it been adhered to, would have been sufficient to remove the issue of intent from the case. We stated, "intent is not placed in issue by a defense that the defendant did not do the charged act at all." *Ortiz*, 857 F.2d at 904; *see also Figueroa*, 618 F.2d at 939–42 (defendant Acosta did not challenge proof that bag contained heroin, but instead denied that episode had occurred at all); *Mohel*, 604 F.2d at 752 (defendant did not claim that he had thought he was selling legal substance, but that he had not participated in any transaction); *Benedetto*, 571 F.2d at 1249 (defendant did not claim that he had taken money innocently or mistakenly, but that he had not taken it at all).

Our cases have thus recognized a distinction between defense theories that claim that the defendant did not do the charged act at all, and those that claim that the defendant did the act innocently or mistakenly, with only the latter truly raising a disputed issue of intent. *See* 2 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 404[09], at 404–64–404–66 (1988).

Colon's position is that his defense fell into the former category. That is, he argues that his defense was not based on the contention that he had innocently participated in the sale, in which case the issue of intent would be crucial. Rather, he says, his defense was that he "did not do the charged act at all," and therefore intent was not in dispute. *See Ortiz*, 857 F.2d at 904. He thus concludes that, as in *Figueroa, Manafzadeh, Mohel* and *Benedetto*, the other acts evidence was not properly admissible to prove intent.

As our review of the record indicates, prior to opening statements, Colon actually put forth two different theories of defense. We turn to the question whether either of these positions was adequate to remove the issue of intent from the case.

### 1. *Colon's Initial Defense Theory*

■ Colon's initial defense theory acknowledged that he had been approached by the undercover detective who asked him about buying heroin. Colon appeared ready to concede that he had responded by pointing, perhaps in the direction of Alvarado. But he claimed to have done so innocently, without the intention of directing Detective White to Alvarado specifically, and, indeed, he claimed that he was completely unaware of Alvarado or his drug dealing. Rather, he pointed down the street generally, in the direction of known drug dealing activity.

Had Colon adhered to this version of events, the crucial issue in the case would have been his state of mind when he responded to Detective White by pointing. In seeking to prove that Colon aided and abetted Alvarado's sale of heroin, the challenge facing the government would have been to demonstrate that Colon had meant to send the detective not down the street, but instead directly to his associate, Alvarado, who was poised and ready to sell the drugs. Thus, it is apparent that under this defense theory, the issue of intent would not have been removed from the case. Indeed, the question of Colon's state of mind would have formed the key battleground of the case. Under these circumstances, Rule 404(b) would have permitted the government to use evidence of Colon's prior acts to prove intent, provided the balancing test of Rule 403 was satisfied.

■ Colon places great weight on his purported offer to stipulate intent out of the case:

> If the government proves that he knew Alvarado and was in fact directing the undercover officer to Alvarado specifically in saying that you can buy the drugs from him, then I will acknowledge that he intended to violate the federal narcotics law and intended to aid in the sale of drugs.

We recognize the problems that faced Colon's defense counsel in clarifying his client's position in the final moments before trial. In considering the significance of an offer to stipulate intent out of the case in order to prevent admission of similar acts evidence, we are concerned not with "the form of words used by counsel but on the consequences that the trial court may properly attach to those words." *See Figueroa*, 618 F.2d at 942. While defense counsel may have been sincerely endeavoring to stipulate intent out of the case, the proffered stipulation failed to do so.

The offer to stipulate was made at a time when Colon was still adhering to his initial defense theory. Again, the government's challenge in rebutting this theory would have been to demonstrate that Colon had meant to send the detective to Alvarado and not elsewhere down the street. Colon's offered stipulation would have conceded nothing on this score, as the government would still have had to prove that Colon meant to point the detective to Alvarado and not down the street. While conceding nothing, the stipulation sought to restrict the government's ability to prove the disputed determinative issue of intent by prohibiting use of the other acts evidence. The district court properly refused to accept this offered stipulation as removing intent from the case.

### 2. *Colon's Amended Defense Theory*

We turn now to the more problematic issues raised by Colon's amended defense theory. As recounted *supra*, immediately prior to opening statements, counsel for Colon stated:

> I am advised that the defendant's version of what happened was that he was out on the street, was never approached by an undercover officer, was never asked by an undercover officer where he could find drugs, engaged in no contacts with the undercover officer, engaged in no contact with Mr. Alvarado.

In essence, Colon was thus contending that he had no recollection of the drug transaction at all. All that he remembered was being on the street at the time. He knew nothing of the incidents underlying the crime charged in this case. Presumably, his first pertinent recollection would be his arrest at the scene.

This defense theory, if adhered to, would have been sufficient to remove the issue of

intent from the case. Colon's defense theory would have been analogous to the position initially taken by the defendant in *Ortiz*. Ortiz conceded that she had been in the vicinity of the alleged drug transaction, but she insisted that the police had arrested the wrong individual. Ortiz, like Colon, essentially said "All I know about this is that I was on the street, and then I was arrested. I do not know anything about this alleged drug sale incident."

■ It is true that Colon's counsel did not repeat the "offer to stipulate" after he adopted the amended defense theory. Nevertheless, upon consideration of the record and of counsel's argument before us, we believe that he was endeavoring to remove intent from the case, and that he might well have agreed to an explicit stipulation if the district court had permitted further examination of the issue after the change in defense theory. It would have been preferable for defense counsel to have explicitly alerted the district court to the implications of the new defense theory as it pertained to removing intent from the case. Nevertheless, under these circumstances, we take Colon's presentation of his amended defense theory to have been an offer to stipulate intent out of the case.

■ We do not mean to suggest that intent could only have been removed from the case by means of a formal stipulation, to be put before the jury, that that issue had been conceded. We have recognized that a defendant might be reluctant to enter into such a formal stipulation as "[t]he conditional nature of such a stipulation may easily be misunderstood" by a jury. *Figueroa*, 618 F.2d at 942. Nevertheless, to take such an issue out of a case, a defendant must make some statement to the court of sufficient clarity to indicate that the issue will not be disputed. *See id.* at 942. A defendant may not purposely use ambiguity tactically, seeking to gain the one advantage of barring admission of prior acts evidence by proffering a particular defense theory, only to later seek the additional advantages stemming from arguing lack of intent to the jury. *See Ortiz*, 857 F.2d at 905. If a defendant does not wish to enter into a formal stipulation, he or she must at least "express a decision,"

*Figueroa*, 618 F.2d at 942, to restrict the defense case so as not to raise the issue of intent, and to accept a jury instruction that would keep that issue out of the case.

We believe that Colon's proffered amended version of events had the potential of constituting "a defense that [he] did not do the charged act at all." *Ortiz*, 857 F.2d at 904. The issue of intent would not have been raised by such a defense. *See id.* Had Colon agreed to an appropriate instruction, the issue for the jury could have been framed in such a way that it would only have had to decide whether the transaction described by Detective White did in fact occur, and whether Colon was the individual described by White as the steerer. There would have been no dispute over whether the alleged steerer's act of pointing was intended to direct White to Alvarado or whether the alleged steerer had knowledge of what was occurring. The jury could have been charged to find the necessary specific intent if it found the other elements. *See id.; Mohel*, 604 F.2d at 754. Thus, if Colon had "unequivocally relie[d]" on this defense theory and had agreed to a corresponding jury charge, evidence of his prior involvement in heroin sales would not have been admissible to prove his intent. *See Ortiz*, 857 F.2d at 904.

■ We reject the government's argument that even under Colon's amended defense theory the similar acts evidence would have been admissible because Colon acknowledged his presence at the scene. The government contends that "there was no dispute that the defendant was connected to the charged events: by his own admission, he was standing in front of 703 9th Avenue at the time of the heroin sale." The government then asks us to conclude that this case is controlled by cases involving defenses of "mere presence." In such cases, we have approved the use of similar acts evidence where a defendant "does not contest that he was present during a narcotics transaction but denies any wrongdoing." *United States v. Fernandez*, 829 F.2d 363, 367 (2d Cir.1987) (per curiam); *see also United States v. Bruno*, 873 F.2d 555, 561–62 (2d Cir.1989); *United States v. Tussa*, 816 F.2d 58, 68 (2d Cir.1987); *Unit-*

*ed States v. Martino,* 759 F.2d 998, 1004–05 (2d Cir.1985).

A disputed issue of intent is apparent when a defendant claims to have had no involvement with a contemporaneous drug sale occurring in the same car, *Tussa,* 816 F.2d at 68, or apartment, *Bruno,* 873 F.2d at 559, 561–62. Similarly, a defendant's state of mind will be in dispute where the defendant acknowledges having accompanied a drug seller, but claims to have had no involvement in the sale. *See Fernandez,* 829 F.2d at 365, 367; *see also Martino,* 759 F.2d at 1001–02, 1004–05 (defendant acknowledged association with alleged co-conspirators on three separate occasions, including being present in same parking lot during transaction). But Colon, in his amended defense theory, made no similar concession with respect to being connected to the drug transaction. He claimed to know nothing about the circumstances leading to the sale. In this context, we reject the suggestion that Colon's acknowledgement that he had been on a public street, near his home and place of employment and also in the vicinity of the crime provides a sufficient connection to that crime to justify admission of similar acts evidence. *Cf. Ortiz,* 857 F.2d at 902, 904 (mistaken identity defense does not raise issue of intent even though defendant was arrested in the area of drug transaction).

## B. *The Timing of Mention or Admission of the Similar Acts Evidence*

■ Before any similar acts evidence can be admitted, the district court must consider whether the evidence is relevant to a disputed issue and weigh its probative value against the danger of unfair prejudice. *Huddleston,* 485 U.S. at ——, 108 S.Ct. at 1501–02; Fed.R.Evid. 403. In light of the importance of this careful analysis, we have on more than one occasion found that

> if the evidence is offered to prove the defendant's knowledge or intent, the of-

fer of similar acts evidence should await the conclusion of the defendant's case and should be aimed at a specifically identified issue. This enables the trial judge to determine whether the issue sought to be proved by the evidence is really in dispute and, if so, to assess the probative worth of the evidence on this issue against its prejudicial effect.

*Figueroa,* 618 F.2d at 939; *see also United States v. Danzey,* 594 F.2d 905, 912–14 (2d Cir.) (distinguishing use of such evidence to prove identity), *cert. denied,* 441 U.S. 951, 99 S.Ct. 2179, 60 L.Ed.2d 1056 (1979); *Benedetto,* 571 F.2d at 1249; *United States v. Leonard,* 524 F.2d 1076, 1092 (2d Cir.1975), *cert. denied,* 425 U.S. 958, 96 S.Ct. 1737, 48 L.Ed.2d 202 (1976). We have recognized an exception to this general rule in cases where there was no doubt that the issue of intent would be disputed in the case. *See United States v. Caputo,* 808 F.2d 963, 968 (2d Cir.1987); *United States v. Reed,* 639 F.2d 896, 906–07 (2d Cir.1981).

■ As described *supra,* we believe that Colon's amended defense theory could have sufficed to remove the issue of intent from the case. Colon's putting forth this theory therefore raised uncertainty as to whether intent would be "really in dispute." *Figueroa,* 618 F.2d at 939; *Benedetto,* 571 F.2d at 1249. Under these circumstances, the district court should have prevented the government from mentioning the evidence of prior heroin sales in its opening statement. Further, admission of the evidence should have awaited the conclusion of Colon's defense case.[2]

We understand the frustration likely felt by the district court in the face of Colon's ambiguous and shifting theory of defense. Colon abruptly changed his entire theory of defense just as the government was about to give its opening statement. Nevertheless, we find the district court's subsequent statement to defense counsel that "if you can't make your mind up before the open-

---

**2.** Of course, there was a possibility that Colon might have presented no evidence. As we have previously said:

> Defendants frequently do not disclose whether there will be a defense case until the prosecution has rested its case. Consequently, the safer course in offering similar act evidence

that should normally await the prosecution's rebuttal case, is for the prosecution to rest, reserving, out of the presence of the jury, the right to reopen to present such evidence in the event the defendants rest without introducing evidence. If that occurs and the evidence is subsequently admitted, the trial judge can in-

ing, I have to take the position that the issue will be in the case" to be inconsistent with our case law. If Colon could not make up his mind what his defense would be, and if there was a possibility that the defense he would ultimately adopt would remove the issue of intent from the case, then the proper course was to await Colon's decision before permitting the similar acts evidence to enter the case by means of an opening statement or a witness' testimony.

We also recognize that Colon may have lost any chance of keeping the issue of intent out of the case when he testified. Colon's testimony can hardly be characterized as "unequivocal[ ] reli[ance]" on his claim that he remembered nothing about the incident. *See Ortiz*, 857 F.2d at 904. On cross-examination, albeit in response to very leading questions, Colon acknowledged that "[p]erhaps" it was possible that he did speak to Detective White. He also said that "[m]aybe" someone could have asked him where to buy drugs. Thus, the government may be correct in asserting that Colon's testimony could have "opened the door to the introduction of the similar act evidence."

The problem is that by the time Colon "opened the door," the proverbial horses had already left the barn. Evidence of his prior involvement in heroin sales had long since been mentioned in the government's opening and admitted through the testimony of Agent Foruria during the government's case-in-chief. It is true that in *Benedetto*, 571 F.2d at 1250, we found that a defendant had opened the door to impeachment with prior acts evidence under Fed.R. Evid. 607, even though the evidence had already been admitted before the defendant testified. We recognized, however, that it would have been advisable to defer the admission of the prior acts evidence until the government's rebuttal case. We declined to find reversible error only "in view of the totality of the circumstances" present in that case. *Id.* Under the cir-

cumstances present here, we will not take Colon to have "opened the door" to the admission of evidence that had already been admitted.

Mention of the similar acts evidence in the government's opening and admission of it during the government's case-in-chief are particularly troubling here in light of Colon's claim that had the evidence not been admitted, he would have elected not to testify. The record leaves no doubt that defense counsel recognized that Colon's case would be badly damaged by admission of the similar acts evidence. Counsel fought hard to have the evidence excluded, and he specifically asked that the government not be permitted to mention the similar acts in its opening. It is quite possible that the choice of defense strategy was dependent upon whether the similar acts evidence would be admitted. With the damaging similar acts evidence already admitted, counsel may have felt that there was no alternative but to have Colon testify. It is plausible that Colon might not have testified if admission of the evidence had been delayed.

When Colon did testify, his defense was badly shaken by cross-examination. Colon's own counsel, in summation, felt obliged to acknowledge that "Mr. Colon's testimony on the witness stand ... was terrible.... [T]he [Assistant] U.S. Attorney made a jackass out of him." Apart from raising serious questions about Colon's credibility, the cross-examination delved into the circumstances of Colon's prior involvement in heroin sales. The cross-examination provided the government with much of the basis for its summation argument to the jury, an argument which emphasized the similarity between the two prior drug sales and the crime charged in this case.

We cannot know what course the trial would have taken had the district court properly delayed any reference to the damaging similar acts evidence until after the defense presented its case. Had he not felt

---

form the jury that court procedure obliged the prosecution to defer its similar act evidence, thereby avoiding any unwarranted inference that the prosecution was desperately using a last-minute tactic.

*Figueroa*, 618 F.2d at 939 n. 1 (citing *Danzey*, 594 F.2d 905).

the need to battle against the similar acts evidence from the start, Colon might have been able to present a coherent defense that would have precluded the admission of the evidence. Under these circumstances, we find that the district court's permitting mention of the evidence in the government's opening and admission of the evidence during the government's case-in-chief constituted reversible error.

### CONCLUSION

The judgment of conviction is reversed and the matter is remanded to the district court for a new trial.