**Sandra D. HARRISON, Plaintiff,**

v.

**LARUE D. CARTER MEMORIAL HOSPITAL, Defendant.**

**No. IP 93–394 C.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

July 12, 1994.

Brenda Franklin Rodeheffer, Monday Rodeheffer & Jones, Indianapolis, IN, for plaintiff.

Pamela Carter and Anthony W. Overholt, Office of the Atty. Gen., Indianapolis, IN, for defendant.

### ENTRY

BARKER, Chief Judge.

Defendant Larue D. Carter Memorial Hospital ("Carter Hospital") moves for summary judgment on Sandra D. Harrison's ("Harrison" or "Plaintiff") Complaint. For the rea-

sons stated below, we grant Defendant's motion.

### I. BACKGROUND

Sandra Harrison has worked in recreational therapy since 1967 and has been employed as a Rehabilitation Therapist IV ("RT IV") at Carter Hospital since 1972. In 1990, a Rehabilitation Therapist III ("RT III") position became open when a person in the Adult Services unit left Carter Hospital. Under the State Personnel Department classification, an RT III position pays nine percent more than a RT IV position and has supervisory responsibilities.

Harrison applied for the position, but a male employee from the Youth Services unit—Jerry Joy—was promoted. Harrison alleges that even though the RT III opening was in the Adult Services unit, Joy remained in the Youth Services unit after his promotion; and a RT–IV was hired for the vacant Adult Services position. In 1992, the RT III position became vacant when Joy left Carter Hospital. Harrison applied again for the promotion but was passed over for a male applicant—David Howard.

Dr. Arthur Sterne, Director of Professional Practice at the hospital, and Elsie Fulmer, then the chairperson of the Rehabilitation Therapy Department, conducted the interviews for and ultimately decided who would fill the RT III position. Harrison claims that she suffered retaliation after she filed an affirmative action complaint with the State. Specifically, she points to an incident in which Sterne approached Harrison to question her about why she filed the complaint. Sterne allegedly became loud and angry with Harrison and caused her to feel threatened. Subsequently, Dr. Sterne allegedly sat in on her therapy sessions when he had not done so previously and only stopped sitting in after Harrison complained to her direct supervisor.

Harrison received her right to sue letter from the EEOC on December 31, 1992, and filed her complaint on March 24, 1993, alleging a violation of Title VII based on sex discrimination and retaliation. Carter Hos-

pital now moves for summary judgment on the Title VII claims.

## II. DISCUSSION

### A. Summary Judgment Standards

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ. Proc. 56(c). While the burden rests squarely on the party moving for summary judgment to show "that there is an absence of evidence to support the nonmoving party's case", *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986), the nonmoving party responding to a properly made and supported summary judgment motion still must set forth facts showing that there is a genuine issue of material fact and that a reasonable jury could return a verdict in its favor. *See Wolf v. City of Fitchburg*, 870 F.2d 1327, 1329 (7th Cir.1989); *Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir. 1983), *cert. denied*, 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). Denials contained in the pleadings or bald allegations that an issue of fact exists is insufficient to raise a factual issue. *See Shacket v. Philko Aviation, Inc.*, 681 F.2d 506, 513 n. 8 (7th Cir.1982), *rev'd on other grounds*, 462 U.S. 406, 103 S.Ct. 2476, 76 L.Ed.2d 678 (1983). "The moving party is 'entitled to a judgment as a matter of law' [if] the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). If doubts remain, however, as to the existence of a material fact, then those doubts should be resolved in favor of the nonmoving party and summary judgment denied. *See Wolf*, 870 F.2d at 1330. The Seventh Circuit Court of Appeals has described the application of these principles in the context of Title VII litigation:

In Title VII cases, we approach the application of these principles with a special caution. Summary judgment is infrequently an appropriate resolution. The factual issues presented in such litigation, including the issue of discriminatory intent which is often proven by circumstantial evidence, cannot often be resolved on summary judgment. However, even when such issues of motive or intent are at stake, summary judgment is proper "where the plaintiff presents no indications of motive and intent supportive of his position."

*Powers v. Dole*, 782 F.2d 689, 694 (7th Cir. 1986) (citations omitted).

### B. Title VII Claims

■ Title VII makes it unlawful "for an employer ... to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race ... [or] sex...." 42 U.S.C. § 2000e–2(a)(1). A plaintiff alleging disparate treatment in violation of Title VII must establish that she has been the victim of intentional discrimination, *see Friedel v. City of Madison*, 832 F.2d 965, 971–72 (7th Cir.1987), which she can do in two different ways: (1) by offering direct proof of discrimination, *see Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), or (2) by relying on indirect evidence using the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), burden-shifting method of proof. *See Bruno v. City of Crown Point*, 950 F.2d 355, 361 (7th Cir. 1991), *cert. denied*, — U.S. —, 112 S.Ct. 2998, 120 L.Ed.2d 874 (1992).

■ In this case, Harrison proceeds via the burden-shifting method. In *McDonnell Douglas*, the Supreme Court set forth the basic allocation of burdens and order of presentation of proof in a Title VII case alleging discriminatory treatment. First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection. Third, should

the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the employer's stated reason for the difference in treatment is unworthy of belief, a mere pretext for discrimination. *See Troupe v. May Dept. Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994) (citing *St. Mary's Honor Center v. Hicks*, — U.S. —, —, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993)).

■ For a plaintiff in a Title VII action to establish a prima facie case of discrimination, she must show that (1) she belongs to a protected group; (2) she applied for and qualified for a job in which the employer was seeking applicants [1]; (3) despite her qualifications, she was rejected; and (4) the employer hired someone outside of the protected group. *See Hughes v. Derwinski*, 967 F.2d 1168 (7th Cir.1992).

In this case, the only disputed element of the prima facie case is whether Harrison qualified for the position of RT III in the Youth Services division. Carter Hospital argues that the person chosen for the RT III position needed to show "(1) experience with mentally ill adolescents; (2) a willingness to engage in theraputic (sic) camping and (3) a willingness to engage in active sports with the patients." Declaration of Arthur Sterne at ¶ 6. Defendant maintains that Harrison was unqualified for the position because she did not meet the above requirements.

Harrison responds that she is legally qualified for the RT III position because the State Personnel Department establishes who is qualified and listed her high on both eligible lists for the promotions in 1990 and 1991/92. Moreover, she points to her 26 years of experience as a recreational therapist, her educational background, and her certifications. Finally, she argues that the criteria given by defendants were post hoc justifications for not hiring her rather than real criteria for the position. She notes that the position of RT III was not necessarily attached to the Adolescent Services unit and could have been created for the Adult Ser-

vices Unit for which she would have been presumptively qualified. In the past, the position of RT III in the Adult Services unit was filled by an RT III, who remained in the Youth Services unit. The Court finds that a jury could reasonably find that Harrison was qualified for the RT III position and has thus satisfied her prima facie case.

The next inquiry is whether Defendant sufficiently explained the reason for its allegedly discriminatory actions. Recently, in *St. Mary's Honor Center v. Hicks*, — U.S. —, —, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993), the Supreme Court emphasized that the defendant's burden is one of production only, not persuasion. We find that the explanations given by Defendant that Howard best met the criteria and qualifications of the second RT III opening sufficiently rebutted Plaintiff's prima facie face.

■ Thus, the key question is whether Harrison has presented any evidence creating a genuine issue of fact as to pretext. To prove that the employer's stated reasons for not promoting Harrison are pretextual, she must establish that he or she has been the victim of *intentional* discrimination. *See Cooper v. Federal Reserve Bank of Richmond*, 467 U.S. 867, 875, 104 S.Ct. 2794, 2799, 81 L.Ed.2d 718 (1984). This showing may be made in one of two ways: "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). No matter which showing is made, "[t]his burden ... merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination." *Id.*

In addition, the employee ultimately must show that the employer's discriminatory intent was the "but for" cause of the adverse action. *See Williams v. Williams Electron-*

---

1. Recently, in *Loyd v. Phillips Brothers, Inc.*, 25 F.3d 518, 522–23 (7th Cir. (Ill.) 1994), the Seventh Circuit dispensed with the requirement of an actual application, where the employer does

not solicit and await such applications but rather hands them out in a "nonselective, serial fashion."

*ics, Inc.,* 856 F.2d 920, 923 (7th Cir.1988). Under the "but for" standard of causation:

> [I]t is not enough for an employee to show that an employer harbored some discriminatory motivation. Rather, the employee must establish that the discriminatory motivation was a determining factor in the challenged employment decision in that the employee would have received the job absent the discriminatory motivation.

*McQuillen v. Wisconsin Educ. Ass'n Council,* 830 F.2d 659, 664 (7th Cir.1987), *cert. denied,* 485 U.S. 914, 108 S.Ct. 1068, 99 L.Ed.2d 248 (1988).

In this case, Plaintiff offers as evidence of pretext the facts suggesting that she was the most qualified person for the position. She also points out that the State's explanation that it sought to fill the RT III position with someone who possessed experience with adolescents was pretextual because in the past it filled an Adult Services RT III position by promoting a Youth Services RT IV. The Court finds that merely because the State may have filled an Adult Services RT III position by promoting someone from outside the division is not evidence that the current explanation it gives for not promoting Harrison is pretextual. *See Lenoir v. Roll Coater,* 13 F.3d 1130, 1133 (7th Cir.1994). Harrison offers no direct evidence of any statements or conduct suggesting that gender factored into Defendant's decision. The indirect evidence of her excellent qualifications and of different personnel decisions in the past, standing alone, do not refute the non-discriminatory reasons given by Defendant. Because courts "do not sit as a super-personnel department that reexamines an entity's business decisions," *see Kralman v. Illinois Department of Veterans' Affairs,* 23 F.3d 150, 156 (7th Cir.1994), we hold that the evidence set forth by Harrison fails to raise a triable issue of fact regarding whether gender was the determining factor in Defendant's decision to promote someone other than Harrison.[2] The Court grants Carter Hospital's motion for summary judgment on the Title VII claim.

### C. Retaliation

■ The remaining issue is whether Defendant retaliated against Harrison after she filed an affirmative action complaint with the State. In *Rennie v. Dalton,* 3 F.3d 1100, 1109 (7th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1054, 127 L.Ed.2d 375 (1994), the Seventh Circuit noted that a "prima facie case of retaliation exists when the plaintiff establishes that '(1) she engaged in statutorily protected expression; (2) she suffered an adverse action by her employer; and (3) there is a causal link between the protected expression and the adverse action.'" (quoting *Holland v. Jefferson National Life Insurance Co.,* 883 F.2d 1307, 1313 (7th Cir. 1989)). The key question is whether Harrison suffered an "adverse action" by Carter Hospital.

Harrison claims that she felt threatened and saddened by Dr. Sterne's remarks to her after she filed an affirmative action complaint with the State. She also alleges that Sterne sat in on her therapy sessions even though he never sat in on other staff members' sessions. The Court finds that the above incidents of alleged harassment, even if true, are insufficient to constitute actionable retaliation, especially because Harrison suffered no loss in pay, change in job status and responsibilities, or change in evaluations of her performance. Moreover, Plaintiff concedes that Sterne stopped sitting in on her sessions after she complained. The Court finds as a matter of law that no actionable adverse actions were taken against Harrison and grants Defendant's motion for summary judgment on the Title VII retaliation claims.

### CONCLUSION

The Court grants summary judgment on all Title VII claims in this cause of action in

---

**2.** Our holding is supported by *Hughes v. Brown,* 20 F.3d 745, 747 n. 5 (7th Cir.1994), where the Seventh Circuit affirmed the district court's judgment in favor of the employer in a failure to promote Title VII race and gender discrimination case. The Court of Appeals in *Hughes* noted that even if the plaintiff had proved that he was the "most qualified person," this alone failed to establish that defendant's proffered reason was a "mere pretext for racial and gender bias." 20 F.3d at 747 n. 5. *See also Stone v. Galaxy Carpet Mills, Inc.,* 841 F.Supp. 1181, 1187 (N.D.Ga. 1993) ("Title VII does not require that the employer promote the most qualified person, only that sex not enter the equation.")

favor of Defendant Carter Hospital and against Plaintiff Harrison.

It is so ORDERED.