SUMMARY ORDER

Sergei Kapirulja was convicted following a jury trial in the United States District *339 Court for the Southern District of New York (Owen, J.) of conspiracy to commit mail fraud and health care fraud, in violation of 18 U.S.C. § 1349, and was sentenced principally to 51 months’ imprisonment. The underlying scheme involved staged or provoked auto collisions followed by phony or exaggerated claims of personal injury. We assume the parties’ familiarity with the underlying facts, the procedural history, and the issues presented for review.
[1] Venue in the Southern District of New York was premised on a 1999 collision involving a Ford Taurus, which occurred in Manhattan, and on letters mailed by Kapirulja’s Manhattan law firm. Kapirulja argues that the Taurus collision was not proven to be part of a fraudulent scheme, and that the mailing of the letters was unforeseeable.
“[V]enue may lie in any district in which the conspiracy was formed or ... in which a conspirator committed an overt act in furtherance of the criminal scheme.” United States v. Rommy, 506 F.3d 108, 119 (2d Cir.2007). The government must prove that venue is proper by a preponderance of the evidence. United States v. Stephenson, 895 F.2d 867, 874 (2d Cir.1990).
The government established that overt acts in furtherance of the conspiracy occurred in the Southern District of New York. A cooperating witness, Aleksey Ma-karov, testified that Kapirulja organized a staged car crash on the F.D.R. Drive in Manhattan; that Kapirulja borrowed a car from a medical clinic for the occasion; and that the clinic representative reduced Ka-pirulja’s kickback because the damage to the car was more extensive than anticipated. In addition, evidence indicated that Kapirulja retained a Manhattan law firm in connection with another collision; it was reasonably foreseeable that the firm would communicate with the insurance company from Manhattan on Kapirulja’s behalf. See Rommy, 506 F.3d at 123 (explaining that the occurrence of an overt act in the district of venue must be “reasonably foreseeable to a conspirator”). There was no need to demonstrate “substantial contacts” with the district; we have required such a showing only where no overt acts occurred in the district. See, e.g., United States v. Saavedra, 223 F.3d 85, 89 (2d Cir.2000).
[2] Kapirulja argues that the district court abused its discretion in admitting evidence relating to the 2002 car crash because that crash was never shown to be part of the conspiracy: no cooperating witness testified that it was a staged accident. Kapirulja maintains that evidence of this crash should have been excluded, and that, even if it was admissible as a similar act, it was unduly prejudicial.
“Relevant evidence includes any ‘evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.’ ” United States v. Kaplan, 490 F.3d 110, 120 (2d Cir.2007) (quoting Fed.R.Evid. 401). We will not disturb the district court’s decision to admit evidence unless “the court’s decision is arbitrary or irrational.” United States v. Pepin, 514 F.3d 193, 205 (2d Cir.2008) (internal quotation marks omitted). In addition, evidence of other crimes, wrongs, or acts is admissible to show, inter alia, “absence of mistake or accident.” Fed. R.Evid. 404(b). We review “404(b) evidence under an inclusionary approach and allow[] evidence for any purpose other than to show a defendant’s criminal propensity.” United States v. Lombardozzi, 491 F.3d 61, 78 (2d Cir.2007) (internal quotation marks omitted). “District courts enjoy broad discretion in admitting evidence of similar acts; to find an abuse of that discretion we must be persuaded that *340 the trial judge ruled in an arbitrary and irrational fashion.” United States v. Bok, 156 F.3d 157, 165 (2d Cir.1998) (internal quotation marks omitted).
Evidence of the 2002 collision was undoubtedly relevant because it showed Ka-pirulja’s involvement in another collision occurring in similar circumstances and resulting in costly medical claims within the time period charged in the indictment. Although no cooperating witness identified this episode as a staged crash, the evidence that was admitted — e.g., medical claims paid out by an insurance company, the other driver’s statement that Kapirul-ja’s car “stopped short,” an engineering report indicating that the crash could not have caused the claimed injuries — made it probative of the conspiracy and Kapirulja’s role in it. Also, this evidence was admissible under Rule 404(b) because it tended to show that the other collisions were not, in fact, accidents. See United States v. Fernandez, 829 F.2d 363, 367 (2d Cir.1987) (concluding that district court properly admitted evidence of prior acts where defendant did not contest his presence but denied any wrongdoing).
[3] The district court instructed the jury that if it found that the 2002 collision was part of the conspiracy, it could consider evidence pertaining to that crash on the question of defendant’s guilt or innocence. The court further advised that if the jury found that the crash was not part of the charged conspiracy, such evidence of a similar act could only be considered to show absence of mistake or accident. Kapirulja argues that this required the jury to make a legal determination as to why the evidence was relevant. We disagree.
“We review jury charges de novo, reversing only where a charge either failed to inform the jury adequately of the law or misled the jury about the correct legal rule.” United States v. Ford, 435 F.3d 204, 209-10 (2d Cir.2006) (internal citations omitted).
The instructions required the jury to make a factual determination — whether the 2002 crash was part of the charged conspiracy, cf. United States v. Nerlinger, 862 F.2d 967, 972 (2d Cir.1988) — and then properly advised the jury of the applicable legal rule depending on its resolution of that issue. Kapirulja cites no legal authority indicating that this type of an alternative charge was improper.
[4] Kapirulja complains that the district court did not give a multiple conspiracies charge, despite indicating that it would do so. We normally review challenges to jury instructions de novo, see Ford, 435 F.3d at 209-10; but where counsel fails to contemporaneously object we review for plain error, see United States v. Schultz, 333 F.3d 393, 412 (2d Cir.2003). Although it is unclear from the record whether defense counsel proposed a different multiple conspiracies charge, Kapirulja concedes on appeal that defense counsel did not object specifically to the charge that was given. See Fed. R.Crim. Proc. 30(d) (stating that objections to jury instructions “must inform the [trial] court of the specific objection and the grounds for the objection”). Kapirulja must therefore “show (1) error, (2) that is plain at the time of appellate review, and (3) that affects substantial rights. Where these conditions are met, we have the discretion to notice a forfeited error if (4) it seriously affects the fairness, integrity, or public reputation of judicial proceedings.” United States v. Regalado, 518 F.3d 143, 147 (2d Cir.2008) (internal quotation marks omitted).
“The gist of the crime of conspiracy ... is the agreement ... to commit one or more unlawful acts, and multiple agreements to commit separate crimes constitute multiple conspiracies.” United States v. Jones, 482 F.3d 60, 72 (2d Cir.2006) *341 (internal citation and quotation marks omitted). The district court instructed the jury that the government was required to prove beyond a reasonable doubt “that the defendant was a member of the conspiracy charged” and that the jury should find Kapirulja “not guilty of this conspiracy charge, even if you find he was a member of some other conspiracy. Proof that defendant was a member of some other conspiracy is not enough to convict.” Although we have approved more detailed multiple conspiracies charges, see, e.g., Jones, 482 F.3d at 73 (jury charge instructed jury about significance of facts such as change in personnel and location of overt acts), this charge sufficiently “stress[ed] ... that there must be [a] finding of the single conspiracy charged and individual knowing participation by [the] individual in it.” United States v. Berger, 224 F.3d 107, 114 (2d Cir.2000) (internal quotation marks omitted). The jury charge was sufficient because it emphasized the government’s burden to prove that Kapirulja was a member of the conspiracy charged, rather than a different conspiracy.
[5] Kapirulja asserts that the district court improperly curtailed defense counsel’s cross-examination of Makarov and that the district court should not have permitted the government to elicit prejudicial testimony on redirect examination.
“The scope and extent of cross-examination lies within the discretion of the trial judge.” United States v. Concepcion, 983 F.2d 369, 391 (2d Cir.1992) (internal quotation marks omitted). “[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about ... interrogation that is repetitive or only marginally relevant.” Delaware v. Van Arsdall, 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986).
Defense counsel endeavored to show through cross-examination that Kapirulja had consumed a substantial amount of vodka when he made incriminating statements to Makarov. Before the cross-examination of Makarov was ended, the defense had elicited testimony that Kapirulja had a bottle of vodka at the meeting, that Kapirulja had just returned from the West Coast and typically drinks after such trips, that both men drank vodka after a toast, and that at some point during their meeting Kapirulja said that he was drunk. Maka-rov also said that he could not recall whether Kapirulja suggested drinking two bottles of vodka, whose bottle of vodka they were drinking, and whether Kapirulja had consumed a substantial amount of vodka over the course of the evening. The court did not abuse its discretion in preventing further questioning. See Fed. R.Evid. 611(a) (“The court shall exercise reasonable control over the mode and order of interrogating witnesses” in order to, inter alia, “avoid needless consumption of time” and “protect witnesses from harassment. ...”).
Kapirulja fails to explain how the district court abused its discretion in limiting defense counsel’s cross-examination on other subjects. Therefore, his conclusory objections on those grounds are forfeited. Tolbert v. Queens College, 242 F.3d 58, 75 (2d Cir.2001) (“[Ijssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.” (internal quotation marks omitted)).
As to the testimony elicited by the government on redirect, “[o]therwise inadmissible testimony may be received on redirect in order to rebut a false impression created by an opposing party during cross-examination.” United States v. Gambino, 59 F.3d 353, 368 (2d Cir.1995). On cross-examination, Makarov stated that, during *342 his first proffer session, he never said that Kapirulja was involved with staged accidents. This risked a misimpression that Makarov implicated Kapirulja in crime as an afterthought to curry favor with the government. The district court therefore permitted the government to ask Makarov whether he told the government at the initial proffer session that Kapirulja was involved in other (generic) criminal activity. This was proper. It would not serve the purpose (as Kapirulja suggests) to simply elicit a statement that Makarov mentioned Kapirulja (without mentioning Kapi-rulja’s criminal activities). Moreover, the district court provided a limiting instruction. We cannot find on this record that the district court abused its discretion.
Finally, Kapirulja contends that in determining the Guidelines range the district court miscalculated the applicable loss amount and erroneously applied a leadership role enhancement. “We conduct our review of sentences under a ‘reasonableness’ standard.” United States v. Thom, 446 F.3d 878, 387 (2d Cir.2006). “We review issues of law de novo, issues of fact under the clearly erroneous standard, mixed questions of law and fact either de novo or under the clearly erroneous standard ..., and exercises of discretion for abuse thereof.” Id.
The district court did not clearly err in assessing a 12-level enhancement on the basis of an actual or intended loss amount of $200,000 to $400,000: for the reasons stated in supra section [2], the court could reasonably find by a preponderance of the evidence that the 2002 collision was part of the charged conspiracy. A sentencing court “need only make a reasonable estimate of the loss, given the available information.” U.S.S.G. § 2B1.1, cmt. n. 3. In addition, use of the November 2002 Guidelines Manual was proper because the court found that the conspiracy continued into 2002. See U.S.S.G. § lBl.ll(b)(l).
The district court did not clearly err in assigning Kapirulja a four-level enhancement based on his role as an organizer or leader of the conspiracy. Makarov testified that Kapirulja organized one of the crashes, recruited him to participate as a driver, borrowed the car from a medical office, instructed Makarov about how to crash the car, and made financial arrangements with the clinic.
Finding no merit in Kapirulja’s remaining arguments, the judgment of the district court is hereby AFFIRMED.