**UNITED STATES of America, Appellee,**

v.

**Richard WIENER, Appellant.**

**No. 266, Docket 75–1218.**

United States Court of Appeals, Second Circuit.

Argued Sept. 18, 1975.
Decided March 24, 1976.

Lawrence S. Goldman, New York City (Goldman & Hafetz, New York City, on the brief), for appellant.

Jo Ann Harris, Asst. U. S. Atty., New York City (Paul J. Curran, U. S. Atty., and Jeffrey I. Glekel, Asst. U. S. Atty., New York City, on the brief), for appellee.

Before FRIENDLY, TIMBERS and GURFEIN, Circuit Judges.

TIMBERS, Circuit Judge:

On this appeal from a judgment entered June 3, 1975 after a four day jury trial in the Southern District of New York, Edmund L. Palmieri, *District Judge,* convicting Richard Wiener on three counts of violating the federal narcotics laws, 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(B), 844(a), 846 (1970),[1] Wiener claims that the district court erred in three respects: (1) in finding that he had consented to the search of his apartment; (2) in admitting in evidence a loaded gun found in the same bag that contained marijuana in his apartment at the time of the search; and (3) in charging

---

1. Wiener was sentenced to three concurrent terms of imprisonment: two years on Count One (conspiracy to distribute hashish and to possess it with intent to distribute); two years on Count Two (possession of hashish with intent to distribute); and six months on Count Three (possession of marijuana with intent to distribute). He was ordered placed on special parole for two years after completion of his prison sentence. He also was fined $2,500 on Count One and $2,500 on Count Two, for a total committed fine of $5,000.

Prior to the commencement of Wiener's trial, his co-defendant, Steven Silverman, pleaded guilty to Count One, the conspiracy count. After Wiener's trial, Silverman was sentenced to a term of five years imprisonment, all but

the jury.[2] For the reasons below, we affirm.

## I.

Turning directly to Wiener's claim that he did not voluntarily consent to the search of his apartment, the court's finding of consent rested primarily on agent Powers' testimony to the following colloquy at Wiener's apartment on October 30, 1974 after Wiener's arrest:

"[Powers]: Do you have any narcotics in the apartment?

[Wiener]: If you find any, you can have them.

[Powers]: Does this mean you are giving us your consent to search the apartment?

[Wiener]: If you can find any, you can have them."

At the day and a half suppression hearing which immediately preceded the trial, there was sharply conflicting evidence—by agents Powers and Greenan on the one hand, and by Wiener and his wife on the other—as to the circumstances of the search. At the conclusion of the hearing and upon the entire record, Judge Palmieri denied the motion to suppress the tangible evidence[3] taken from Wiener's apartment on the ground that Wiener's consent to the search was voluntary and unequivocal.

■ The judge's conclusion was based on his finding that he believed the testimony of the agents and did not believe the testimony of Wiener and his wife. The resolution of such an issue of credibility of course is the classic function of the trier of the facts. We will not set aside such a finding unless clearly erroneous. We hold that Judge Palmieri's factual finding of consent[4] was not clearly erroneous. *United States v. Miley,* 513 F.2d 1191, 1201 (2 Cir.), cert. denied, 423 U.S. 842 (1975); *United States v. Faruolo,* 506 F.2d 490, 493 (2 Cir. 1974); *United States v. Fernandez,* 456 F.2d 638, 640 (2 Cir. 1972).

■ In holding as we do on this issue, we are mindful that Wiener was in custody at the time he gave his consent, in contrast to *Schneckloth v. Bustamonte,* 412 U.S. 218, 248 (1973), and many other cases where consent searches have been sustained. The fact of custody does not alone preclude the giving of a voluntary consent, *United States v. Watson,* 423 U.S. 411, 424 (1976); *United States v. Candella,* 469 F.2d 173, 175 (2 Cir. 1972); *United States ex rel. Lundergan v. McMann,* 417 F.2d 519, 521 (2 Cir. 1969), but it should require more careful scrutiny. We have done just that.

## II.

Wiener also claims that the court abused its discretion in admitting in evidence the loaded Pietro Beretta pistol which was found in his apartment at the time of the search on the day of his arrest. We disagree.

---

two months of which was suspended, and was placed on probation for one year.

2. Wiener does not challenge the sufficiency of the evidence to support his conviction. He states in his brief that "viewed in the light most favorable to the Government, the evidence is sufficient to justify a conviction . . . ." Asserting, however, that the government's case was far from strong, he invites us to examine with care the claims of error which he does raise. We have done so.

3. This tangible evidence, later admitted in evidence at the trial, consisted of marijuana, hashish smoking paraphernalia and a loaded gun—all found together in a burlap bag in a half-open closet in Wiener's apartment.

4. Among the other facts which support the judge's finding of a voluntary consent—in the judge's words, "almost . . . a gracious invitation to search the apartment"—are Wiener's background (32 years of age, 3 years attendance at college, a successful and experienced restaurant manager); his understanding of his right not to incriminate himself (having twice been given the standard *Miranda* warnings); his understanding of the permission he was granting to conduct the search (having repeated his invitation to search the apartment after the agent rephrased the question specifically in terms of "consent to search the apartment"); the fact that Wiener himself initiated the return to and entry into his apartment; and the absence of any force, deceit, fraud or abuse on the part of the agents. See *Schneckloth v. Bustamonte,* 412 U.S. 218, 226, 248–49 (1973).

Although Wiener was arrested on the street a short distance from his apartment and a half block from where the 40 pound hashish transaction charged in the indictment occurred, there was abundant evidence from which the jury could have found that Wiener's apartment was the focal point of the conspiracy. According to the testimony of co-conspirator Silverman, it was there that Wiener discussed with Silverman the availability of 800 pounds of hashish; it was there that Wiener had distributed hashish to Silverman and had collected money from him in prior dealings; it was there that Wiener had received large quantities of hashish; it was there that arrangements had been made for the instant 40 pound transaction; it was there that Wiener had disposed of all but 40 of the original 800 pounds of hashish; and it was there that the jury could have inferred that approximately a half million dollars of illicit cash from hashish had come into Wiener's hands during the month of October 1974. In short, Wiener's apartment was the logical place for Wiener to keep the gun since there was evidence that this was where the narcotics were stashed, the negotiations took place and the money was kept, at least temporarily. Moreover, the loaded gun here in question was found in Wiener's apartment *in the same burlap bag* that contained marijuana and hashish smoking paraphernalia. Note 3, *supra*.

Experience on the trial and appellate benches has taught that substantial dealers in narcotics keep firearms on their premises as tools of the trade almost to the same extent as they keep scales, glassine bags, cutting equipment and other narcotics equipment.

■ We hold that the gun was relevant to the issues upon which Wiener was tried and that the court did not abuse its discretion in holding that its probative weight was not overbalanced by the inflammatory tendency of the gun as evidence. See *United States v. Campanile*, 516 F.2d 288, 292 (2 Cir. 1975); *United States v. Fisher*, 455 F.2d 1101, 1103–04 (2 Cir. 1972); *United States v. Ravich*, 421 F.2d 1196, 1204–05 (2 Cir.), *cert. denied*, 400 U.S. 834 (1970); *United States v. Pentado*, 463 F.2d 355, 360 (5 Cir. 1972), *cert. denied*, 409 U.S. 1079 (1972) and 410 U.S. 909 (1973).

### III.

Finally, Wiener claims that he was prejudiced by the court's charge to the jury in several respects.

■ The only aspect of the charge which we believe warrants brief mention[5] is the court's summary or marshalling of

---

5. We find no merit in Wiener's other attacks upon the charge.

The court's statement that if "we have engaged in a monstrous charade . . . you should have no hesitancy in acquitting the defendant" could well have been intended to be and to have operated in Wiener's favor although he argues that it had a contrary effect.

With respect to the witness Silverman (as to whom the court had given the standard accomplice charge, preceded by full instructions on credibility of witnesses), Wiener complains of the following isolated portion of the court's reference to Silverman:

"I don't know how you are going to come out with respect to his testimony and, as I say, I do not wish to make any suggestions to you whatever, but I do say this: That regardless of how he comes out, Silverman is an extremely intelligent person. He considered every question that was put to him very carefully and he articulated his responses with consummate care and I respectfully suggest that regardless of what else he may be he is a very intelligent person."

Standing alone, this comment on the credibility of Silverman, especially against the defense contention that he was mentally unstable, might be viewed as coming pretty close to the line of impermissible comment. It must be considered, however, in light of the court's previous credibility instruction which included the following (Silverman being the only witness with a college education):

"A man with a criminal record and without an education can tell the truth. A man with a college degree and who is perfectly articulate and speaks with an Oxonian accent can be a liar. . . ."

Moreover, at the request of defense counsel, the court gave the following supplemental instruction on Silverman's credibility:

"Now, on Silverman, this Stephen Silverman. Obviously he had a motive to lie. He had more than one motive to lie. He had as many motives to lie as he had federal offenses that he had committed and he admitted on the stand any number of offenses that he had committed, if you accept his state-

the evidence. Wiener claims that the court's recitation of the facts was one-sided and argumentative. As any trial judge knows, even the most meticulous effort to balance a summary of the evidence in the charge inevitably will be met with a claim of distortion. We have carefully examined Judge Palmieri's charge as a whole and we find Wiener's claim of distortion to be without merit, having in mind particularly that the charge immediately followed summations by counsel which in turn followed two days of evidence, all of which took place within a period of three successive days.

Nevertheless, mindful that this was a relatively short, uncomplicated trial involving one defendant, essentially one narcotics transaction, and all of which occurred on one day, we are constrained to renew our suggestion that trial judges in this circuit should carefully consider the preliminary question whether any further summary of the evidence is needed in the charge in a case of this sort. See *United States v. Kahaner,* 317 F.2d 459, 479 n. 12 (2 Cir.), *cert. denied,* 375 U.S. 835 (1963). A case like this is in sharp contrast to a complicated stock fraud case involving the conspiracy of several defendants, the state of proof with respect to each of whom is both varied and intertwined. See *United States v. Kelly,* 349 F.2d 720, 757 (2 Cir. 1965), *cert. denied,* 384 U.S. 947 (1966).

We have considered carefully all of Wiener's claims of error and find them to be without merit. We order that the mandate issue forthwith.

Affirmed.

ments about the wheeling and dealing in hashish.

> If you think he lied and you didn't get the truth from him, that is your privilege and your duty, but please, don't permit me to govern your fact-finding conclusions in any way."

Finally, Wiener complains of the court's failure to charge that Steven Silverman's alleged per-jury was motivated by his desire to cover up the masterminding of the transaction by his friend Larry Silverman. Upon the record as a whole, this strikes us as not a failure to charge a theory of the defense but simply an omission of one of the many attacks leveled at the witness' testimony.