UNITED STATES of America, Appellee,

v.

Juan FERNANDEZ,
Defendant-Appellant.

No. 1476, Docket 87–1119.

United States Court of Appeals,
Second Circuit.

Argued Aug. 12, 1987.

Decided Sept. 24, 1987.

**364**

William E. Simon, Jr., Asst. U.S. Atty. (Rudolph W. Giuliani, U.S. Atty. for S.D. N.Y., and Bruce A. Green, Asst. U.S. Atty., of counsel), for appellee.

Louis M. Freeman, New York City (Freeman, Nooter & Ginsberg, of counsel), for defendant-appellant.

Before WINTER and MAHONEY, Circuit Judges, and RE.[*]

PER CURIAM:

Juan Fernandez appeals from a judgment of conviction, entered by Judge Griesa (S.D.N.Y.) after a jury trial, for conspiracy to possess with intent to distribute marijuana. 21 U.S.C. §§ 812 (1982 & Supp. III 1985), 841(a)(1) (1982), 841(b)(1)(B) (1982 & Supp. III 1985) and 846 (1982).

There was evidence at trial that Fernandez, along with named co-conspirator Hector Cedeno (a/k/a "Luis Gonzalez"),[1] negotiated by telephone with DEA Special Agent Armando Marin to purchase 400 pounds of marijuana. The day after the phone negotiation, appellant and Cedeno were driven by Cedeno's mother, Carmen Cedeno,[2] a cab driver who was driving her taxicab, to the apartment of co-defendant Marino Jerez.[3] Special Agent Marin and two other agents met Fernandez, and, according to Marin's testimony, Fernandez identified himself as the person with whom Marin had spoken over the telephone. After initial preparations were made for moving bales of marijuana into Jerez's apartment, the agents arrested appellant, Jerez, Hector Cedeno and Carmen Cedeno. The agents seized a loaded semi-automatic handgun from the apartment, and $85,000 in cash from the trunk of the car.

At trial, Carmen Cedeno testified about the activities of appellant and her son on the day of the arrest. Reference was made to the fact of her cooperation agreement, both in the government's opening statement and on direct examination. Defense counsel did not question her on cross examination concerning her cooperation agreement. On redirect, the government offered the agreement into evidence and it was admitted over objection. The agreement was not read into evidence, however, and it was not sent into the jury room.

---

* *Chief Judge,* United States Court of International Trade, sitting by designation pursuant to 28 U.S.C. § 293(a).

1. Hector Cedeno is a fugitive and was not tried with Fernandez.

2. Carmen Cedeno was charged as a co-defendant, but charges against her were dismissed pursuant to a cooperation agreement.

3. Jerez was acquitted at trial.

The gun seized from Jerez' apartment was offered by the government as evidence. After hearing defense objection that the prejudicial impact of the evidence would outweigh its probative value because the gun belonged to Hector Cedeno, a co-conspirator who was not on trial, Judge Griesa admitted the gun.

Appellant also testified at trial, and his defense was that he knew about the drug transaction, but that he merely accompanied Hector Cedeno to the scene and had no stake in the venture. On cross examination, the government questioned Fernandez about previous narcotics negotiations with an undercover DEA agent and showed Fernandez a copy of an "official DEA report." This testimony was later stricken, the report was never admitted nor the jury informed of its contents, and the jury was instructed to disregard the whole line of questioning.

Finally, on the penultimate day of trial, when all that remained were the summations, Fernandez did not appear in court. Judge Griesa granted a one-day continuance and issued a bench warrant. On the following day, January 8, Judge Griesa inquired of Fernandez's attorney, a U.S. Marshall and a DEA agent whether Fernandez had been located. The attorney said that he had telephoned Fernandez hourly, without response. The Marshall described his unsuccessful efforts to locate Fernandez at home and his interviews with Fernandez's neighbors, which indicated that Fernandez might have fled his apartment. The DEA agent said that FBI records indicated that Fernandez had not been arrested. The judge then granted the government's motion for trial *in absentia.*

Appellant raises four issues on appeal. Only the first, his claim concerning the admission of the cooperation agreement, merits any extended consideration.

■ Appellant contends that the cooperation agreement between the witness Carmen Cedeno (the mother of Hector Cedeno) and the Government was improperly admitted into evidence. The rule in this circuit is that the existence of such an agreement may be adduced on direct examination of the witness who has entered into the agreement in order to preclude any inference of concealment by the Government, *United States v. Edwards,* 631 F.2d 1049, 1052 (2d Cir.1980), but the agreement itself may only be offered in evidence on redirect examination if the credibility of the witness has been challenged on cross examination. *United States v. Borello,* 766 F.2d 46, 56 (2d Cir.1985).

■ Here, there was reference, without objection, to the existence of the cooperation agreement in the prosecutor's opening statement and during the direct examination of Carmen Cedeno. The testimony on direct as to the existence of the agreement may have gone too far, since the witness actually stated that the Government agreed to "dismiss my charges *if I said the truth."* Tr. 105 (emphasis added). *See Borello,* 766 F.2d at 57 (before impeachment, witness may testify only about those portions of agreement that indicate witness's "motive for cooperating with the Government," not about those portions that bolster witness's credibility); *United States v. Jones,* 763 F.2d 518, 522 (2d Cir. 1985) (Government may elicit testimony concerning "truth-telling portions of cooperation agreements" on direct examination only when there has been an attack on credibility during opening statements by defense counsel). But defense counsel did not object, and any error is therefore not reversible.

After cross examination, however, the cooperation agreement was put in evidence by the government over the defense's objection, although no portion of the agreement was ever read to the jury, and the record makes clear that the agreement was never sent into the jury room during its brief deliberations.

■ It is unlikely that Mrs. Cedeno's credibility was challenged on cross examination so as to call into operation the rule allowing admission of the cooperation agreement into evidence on redirect examination. It is true that defense counsel repeatedly asked Carmen Cedeno whether she had seen *both* her son and Fernandez

knock on the trunk of her taxicab before placing a package therein at an early stage of their fateful journey.[4] Mrs. Cedeno's answers in response to this questioning[5] suggested a certain degree of confusion or equivocation as to whom she actually saw knocking.[6] Not every cross examination which attempts to undermine a witness's direct testimony, however, can fairly be considered an attack on credibility. *Compare* Fed.R.Evid. 608(a)(2) (evidence of truthful character admissible only after character of witness for truthfulness has been attacked by opinion or reputation evidence or otherwise). Later, in summation, on the other hand, defense counsel referred back to this very testimony and mentioned the cooperation agreement in a way that certainly did attack her credibility,[7] but a later attack on credibility does not make an earlier admission of "bolstering" evidence proper. *See Borello,* 766 F.2d at 57.

◼ In any event, if it was error to allow the agreement to be put in evidence on redirect examination in the face of a defense objection to admissibility, we hold that the error was harmless. The defense contends that under *Borello,* such error should never be deemed harmless, lest our pronouncements on this question be rendered "ceremonial." *See Borello,* 766 F.2d at 57–58. We do not read *Borello* as stating such a rule.[8] In *Borello,* the agreement was entered into evidence over defense objection on the witness's direct examination, and the court refused to entertain consideration of the harmless error question where our considerable body of precedents on this question had been blatantly violated. The circumstances were

different here, where the cooperation agreement was *not* introduced into evidence during Mrs. Cedeno's direct examination, and the Government apparently made a good faith determination that Mrs. Cedeno's credibility had been assailed on cross examination, when it had to anticipate at the time of redirect examination the closing argument of the defense concerning her testimony. Furthermore, no part of the agreement was read into evidence, the prosecutor made no reference to it in his closing argument, and it was not consulted by the jury during its deliberations. *Contrast Borello,* 766 F.2d at 56. On all the facts here presented, accordingly, we have no hesitation in concluding that any error resulting from the admission of Mrs. Cedeno's cooperation agreement was harmless.

◼ Fernandez's claim that he should not have been tried *in absentia* is without merit. Judge Griesa applied the criteria set forth in *United States v. Tortora,* 464 F.2d 1202 (2d Cir.), *cert denied,* 409 U.S. 1063, 93 S.Ct. 554, 34 L.Ed.2d 516 (1972), and correctly found that the defendant had waived his right to be present at trial by voluntarily absenting himself without excuse. Fernandez had been present on the afternoon of January 6, 1986 when the Court adjourned, and thus knew that the trial would continue at 10:00 a.m. on January 7. At the time of the government's application, Fernandez had been absent for more than twenty-four hours, his lawyer was unable to locate him, and there was no indication that he would return soon. Failing to try Fernandez *in absentia* would have resulted in separate trials in a case in which the evidence against the defendants

---

4. $85,000 in cash was seized from the car trunk.

5. At one point, the government objected to the repeated questioning on this issue. The objection was overruled. Tr. 114.

6. First she merely said "they knocked." Tr. 112. During the persistent questioning on the point, she said "one of them knocked," Tr. 113, and "I do not know which of the two people knocked," Tr. 114.

7. Defense counsel argued in closing:
    You heard Carmen Cedeno say "They knocked on the trunk." Why did she say "They

knocked on the trunk?" Because she wanted to lump Mr. Fernandez and her son together. I am not suggesting that she was lying, I am suggesting that she was trying to help herself. She became a government witness, she was once a defendant, she became a government witness. She was trying to help herself by saying something that would please the government, "They knocked on the trunk." Tr. 235.

8. Actually, *Borello* states the quite different proposition that such error "cannot always be harmless." 766 F.2d at 57.

was virtually identical, would have caused delay potentially affecting the recollection of some witnesses, and would have increased the exposure of, and resultant risk to, the undercover officer. Moreover, Fernandez's absence was not improperly used to influence the jury, as the government never called attention to his absence or argued that any negative inferences could be drawn from it, and Judge Griesa explicitly instructed the jury to disregard Fernandez's absence.

The district court also properly allowed questions concerning Fernandez's prior narcotics negotiations with an undercover agent. Where, as here, the defendant does not contest that he was present during a narcotics transaction but denies any wrongdoing, the use of such evidence is proper. *See United States v. Martino*, 759 F.2d 998, 1004–05 (2d Cir.1985). In any event, there was no conceivable prejudice, as Judge Griesa ultimately instructed the jury to disregard this evidence. *See, e.g., United States v. Nixon*, 779 F.2d 126, 133 (2d Cir.1985) (curative instruction to disregard informant's statement that defendant had been previously arrested for heroin smuggling).

Finally, Judge Griesa acted within his discretion in admitting the revolver seized from Jerez's apartment, over the defense's objection that the danger of unfair prejudice outweighed the probative value of the evidence. Fed.R.Evid. 403. Even if the fully loaded gun did not belong to appellant, it did belong to a named coconspirator and it was seized from the scene of the drug transaction. The gun was thus highly probative of the existence of a narcotics conspiracy. Where a loaded gun has been seized from an apartment that was "the focal point of the [narcotics] conspiracy," the Second Circuit has held that such evidence has significant probative value. *United States v. Wiener*, 534 F.2d 15, 18 (2d Cir.1976). *Accord: United States v. Alvarez*, 755 F.2d 830, 849 (11th Cir.1985); *United States v. Perez*, 648 F.2d 219, 224 (5th Cir.1981). The *Wiener* court observed: "Experience on the trial and appellate benches has taught that substantial dealers

in narcotics keep firearms on their premises as tools of the trade almost to the same extent as they keep scales, glassine bags, cutting equipment and other narcotics equipment." 534 F.2d at 18. Under circumstances similar to those in the present case, the court held "that the gun was relevant to the issues upon which Weiner was tried and that the court did not abuse its discretion in holding that its probative value was not overbalanced by the inflammatory tendency of the gun as evidence." *Id.*

Affirmed.