

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

### NO. PD-0144-25

## VICTOR HUGO CUEVAS, Appellant

### v.

## THE STATE OF TEXAS

## ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW FROM THE FOURTEENTH COURT OF APPEALS FORT BEND COUNTY

PARKER, J., delivered the opinion of the Court in which RICHARDSON, NEWELL, WALKER, and McCLURE, JJ., joined. McCLURE, J., filed a concurring opinion in which WALKER, J., joined. KEEL, J., concurred. YEARY, J., filed a dissenting opinion in which FINLEY, J., joined and SCHENCK, P.J., joined as to part 6.

## <u>OPINION</u>

Throughout the trial, this case included serious misstatements of law that

were buttressed by the trial judge's rulings. In *voir dire*, opening statements, and closing arguments, the State took the position that Appellant could not assert self-defense because he was engaged in the commission of a crime during the shooting even though the law deprives a defendant of only a presumption of reasonableness if he commits a crime at the time he uses force in defense of himself. Concluding that it was uncontroverted that Appellant was committing a crime at the time of the incident, the court of appeals found that it was error to include a presumption-of-reasonableness instruction in the jury charge. Nevertheless, the court of appeals held that this erroneous inclusion was harmless. Appellant contends, among other things, that the court of appeals erred in its harm determination. We agree.[1]

---

[1]We granted Appellant's first two grounds for review. In ground one, Appellant claimed, among other things:

> The Court of Appeals majority erred in finding harmless error where:
>
>     . . .
>
> b) the prosecutor erroneously repeatedly misstated during jury selection, the defense opening statement, and final argument that the law did not allow Petitioner to claim self-defense because he was engaged in criminal activity and the trial judge repeatedly erroneously ruled in favor of the misstatements by the prosecutor,
>
> c) over defense objections, the trial judge erroneously included a charge which stated a person does not get a self-defense presumption of reasonableness if he is engaged in criminal activity as well as a provocation charge.

# I. BACKGROUND

## A.    The Incident

In July 2017, while eating sushi at a shopping center, Juan Garza saw Appellant and his friend Milton Egbe (Egbe) on two motorcycles speed into the parking lot. Appellant got off his motorcycle and walked over to a parked car to speak to Osiekhuemen Omobhude (Ose) in his car. Garza then heard a sound "like fireworks" and saw Appellant chasing the car, gun in hand, as Ose drove away.

While working at a Buffalo Wild Wings, Alexis Blanton recalled a man, later determined to be Ose,  rushing into the restaurant in a "frantic" state and "looking for help." Ose collapsed and became "unresponsive." First responders took Ose to a hospital where he was pronounced dead. The medical examiner revealed that Ose had been shot in the right side of his face and the back of his right shoulder and likely died within a matter of minutes.

Appellant and Egbe testified in Appellant's defense. According to Appellant, he and Egbe planned to eat at the sushi restaurant and then go to a nearby shooting range, but it became apparent that the two would not have had enough time to get

---

Due to our disposition of the portion of Appellant's first ground that addresses harm from the inclusion of the presumption of reasonableness in the jury charge, we do not reach other issues contained in his first ground, nor do we reach his second ground for review.

to the shooting range before it closed had they eaten before. Appellant testified that he planned to sell marijuana to Ose, so he set up a drug buy, texted Ose the time, place, and price for the drug deal, brought a handgun, and gave another handgun to Egbe to Egbe's surprise. When the two arrived at the parking lot, Appellant told Egbe to wait by the motorcycles while he walked to Ose's car. Appellant sat in the car on the passenger side with his backpack of marijuana. According to both Appellant and Egbe, Ose pressed a gun to Appellant's head, choked him, took his phone and marijuana, and then told him to "[g]et the fuck out." Once he stepped out of the car, Appellant looked back at Ose, who still had his gun trained on him. Ose asked, "Do you have any bread?" Appellant said that he did not have money, to which Ose said, "Stop playing with me. I will smoke you," as he cocked his handgun.

According to Appellant, immediately after Ose cocked his gun, Appellant shut the door, retrieved the handgun he had tucked into his waistband, and shot seven times into the car. Ose drove away, initially heading toward Egbe and the motorcycles. Egbe testified that he reached into his backpack to draw his weapon when he saw Ose put a hand on Appellant's neck. He was still looking for his gun when he heard gunshots but did not know who was shooting. When he looked up,

the car was heading toward him, so he shot at the car.

Investigator Patrick Douglas, for the Fort Bend County Sheriff's Office, testified to a security camera video that recorded a scene after the shooting where it shows Appellant and Egbe putting their motorcycles into a garage. Investigator Douglas noted that it appeared as though Appellant and Egbe either high-fived or fist-bumped each other.

Jesse Richey testified that he was at a friend's house two weeks before the shooting and met Ose. According to Richey, Ose told him, "He wanted to rob somebody named Victor. And whenever I tried telling him that it wasn't a good idea, that he should not do that, he said that he did not care and that Victor was an easy lick for him."

## B. The Trial

The State's theory at trial was that this was a drug deal that "went south" and that Appellant intended to shoot and kill Ose. Appellant relied on a theory of self-defense, that Ose robbed Appellant and threatened him with gun violence. The jury charge instructed the jury on murder, self-defense, and the law of parties. The jury found Appellant guilty of murder. The main issue in this case is whether the erroneous inclusion of a presumption on self-defense harmed Appellant. This issue

manifested itself throughout the trial, beginning in *voir dire*.

1.  *Voir Dire*

An issue throughout the trial was whether the prosecutor misstated the law on self-defense. While addressing the venire about the presumptions of reasonableness of self-defense, the prosecutor made the following explanation:

> [PROSECUTOR]: Okay. So you have that. And you didn't start. Okay? So somebody's breaking into your house with deadly force, you're reasonable to use deadly force against them because you didn't start the – you didn't start the action, right? *And you were not engaged in criminal activity.* So all three of those things have to occur. For example –
>
> [DEFENSE COUNSEL]: Objection, Judge, that's an improper statement of the law.
>
> [PROSECUTOR]: It's under 9.32, exactly out of the Code, Judge.
>
> [DEFENSE COUNSEL]: Only to get a presumption, Judge. She's saying it's a proposition of law that you can't use deadly force unless all these things occur. And that's flat wrong. That's only if you want the presumption that it's reasonable.[2]

The trial judge had the prosecutor repeat the question, and she said, "What I'm trying to explain to the jury, Judge, are situations where deadly force is

---

[2]Emphasis added.

reasonable under the law." Defense counsel again said that this is incorrect, and the judge overruled the objections. Just after this exchange, the prosecutor quizzed the venire on self-defense by using an example of a thief claiming self-defense. During this hypothetical, the prosecutor said, "Yes. He's stealing, which is a crime right, right? So he can't use deadly force there either, can he?" Defense counsel objected again, stating that the State is trying to mislead the jury. This objection was also overruled.

To illustrate its explanation of self-defense, the State also showed the venire a slide show.[3] One slide was titled, **"Deadly Force is Reasonable IF:"** That slide ends by telling the venire that deadly force is reasonable if the defendant, "Was NOT **engaged in criminal activity**." The next slide was titled, "Use of **Force NOT justified…**" The last bullet-point under this heading said: "If you are committing a crime." Defense counsel also objected to these slides and was overruled again.

### 2.    Opening Statement

The next time this issue arose was in the Defense's opening statement. The State waived its opening. In the first full page of his opening, defense counsel said,

---

[3] *See infra* at Appendix A.

"And unlike what you heard in voir dire about self-defense not being available, if someone is committing a crime, self-defense is available if someone is committing a crime." The State objected "as to improper opening and also a misstatement of the law." This objection was sustained.

### 3.    Charge Conference

During the charge conference, defense counsel argued that the jury charge should not include any presumption language because it was not at issue. Defense counsel told the trial judge:

> Judge, the rest of 9.32 has to do with the presumption, which is not applicable to this case. And it's an improper comment on the weight of the evidence. So it's not applicable.
>
> . . .
>
> Presumption is not an issue here. It's not proper to include it, Judge.

The prosecutor responded that the jury charge should include the "whole law" but conceded that "the defendant admitted on the stand that he was participating in delivery of marijuana." The defense attorney continued:

> We're not asking for the presumption, Judge. It's not applicable. And all it does is it gives the prosecutor a chance – you know, this is a -- this is a sore subject, Judge. Because this prosecutor voir dired on the wrong

law. I objected many times. You let her do it. You let her voir dire on the wrong law and let the jury –

The judge interrupted and told defense counsel not to "get into personal attacks." Defense counsel disagreed that he was engaging in a personal attack and emphasized the importance of the issue, saying, "The importance begins in voir dire when the jury was told and allowed to be told the wrong law. It's not applicable." The judge responded, "That's your opinion . . . And you can disagree with my ruling and you made that quite clear."

Later, defense counsel explained his concern:

> And I know, no doubt, what she's going to try to do, she's going to try to mislead the jury again and go back and say: Oh, look at this section here. He was committing a crime, therefore he doesn't get self-defense. And I've got to go through and say – go through this whole thing again that's already been bandied around when it does not apply, Judge.
>
> . . .
>
> Judge, we have stipulated and it's uncontroverted that he was involved in criminal activity with the possession of marijuana, other than a Class C misdemeanor, which would make him unavailable to have the presumption of reasonableness.
>
> . . .
>
> And so all it does is to confuse the jury and it goes back to what the prosecutor has been doing all along is trying to

confuse the jury on the law and the facts. It's not applicable, period.

. . .

This presumption has nothing to do with it. All it does is mislead them and confuse them because it's not applicable. And not being applicable, they're going to get confused and the prosecutor's going to get up and do just what she did in voir dire and say: Oh, he's committing – he's committing a crime so he doesn't get to use it, find him guilty.

. . .

And she's already used it in a bad way and she'll continue to use it again.

## 4.    Jury Charge

The abstract portion of the jury charge stated the following:

> The defendant's *belief* that the deadly force was immediately necessary is presumed to be *reasonable* if the defendant knew or had reason to believe that the person against whom the deadly force was used: unlawfully and with force entered, or was attempting to enter unlawfully and with force, the actor's occupied habitation, vehicle, or place of business or employment; unlawfully and with force removed, or was attempting to remove unlawfully and with force, the defendant from the defendant's habitation, vehicle, or place of business or employment; or was committing or attempting to commit aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery; and the defendant did not provoke the person against whom the force was used; *and the defendant was not otherwise engaged*

*in criminal activity*, other than a Class C misdemeanor that is a violation of a law or ordinance regulating traffic at the time the force was used.[4]

The presumption of reasonableness did not have a dedicated instruction in the application section of the charge, but a variation of the words "reasonable belief,"[5] to which the presumption relates, was contained in the self-defense application paragraph:

> Therefore, if you find from the evidence beyond a reasonable doubt that the defendant, Victor Cuevas, did shoot Oseikhuemen Omobhude with a deadly weapon, namely a firearm, as alleged, but you further find from the evidence, as viewed from the standpoint of the defendant at the time, that from the words or conduct, or both of Oseikhuemen Omobhude it reasonably appeared to the defendant that his life or person was in danger and there was created in his mind a reasonable expectation or fear of death or serious bodily injury from the use of unlawful deadly force at the hands of Oseikhuemen Omobhude, and that acting under such apprehension and *reasonably believing* that the use of deadly force on his part was immediately necessary to protect himself against Oseikhuemen Omobhude's use or attempted use of unlawful deadly force, he shot Oseikhuemen Omobhude, then you should acquit the defendant on the grounds of self-defense; or if you have a reasonable doubt as to whether or not the defendant was acting in self-defense

---

[4]Emphasis added.

[5]See TEX. PENAL CODE § 1.07(b) ("The definition of a term in this code applies to each grammatical variation of the term.").

on said occasion and under the circumstances, then you should give the defendant the benefit of that doubt and say by your verdict, not guilty.[6]

## 5.    Closing Arguments

In closing arguments, defense counsel discussed the presumption language in the jury charge:

> But you-all did take that oath to tell the truth and a true verdict. And unlike what the prosecution told you back in voir dire that if you're committing a crime, you can't use self-defense. And y'all remember back then I was bouncing out of my chair like a Jack-in-the-box screaming, saying that's not the law.
>
> Guess what? I told you right. It's not the law. It does factor into a presumption, an assumption if you will. An instance in some situations in which you can sort of start in a different place other than the race line where everybody's at the same place.

Later in his closing, defense counsel explained the presumption further:

> We talked about—back in voir dire, [a]bout the Castle Doctrine and how it gives you a presumption, if certain things are applicable. They're not applicable in this case, but because it's here we're going to talk about it. You can get a presumption of reasonable, otherwise your actions in shooting are presumed to be reasonable, which is like a head start. Okay?

---

[6]Emphasis added.

It's not starting on the same line, it's an assumption. You can assume that the deadly force is okay if certain things happen. And those certain things are—and the list is all there—basically you'll see them in the list and y'all can go back and read them. Is if [sic] like you're in your home or your car or something like that, not doing anything illegal, someone tries to come in on you, you can shoot them died [sic]. And the cops come out and go: Is that what happened? Yep. Okay. We're going to presume it's good.

And instructions to the jury will be the same thing. We're going to assume that there's no problem, everything is fine. That's a presumption. That's what this is explaining to you here, how a presumption works. I'm telling you it doesn't apply because [Appellant] was selling dope.

And this is no different, ladies and gentleman, in life and someone sitting in their car at a red light with their wife and had a few too many beers, someone pulls up and yanks her out of the car, dragging her to another car. Does it make sense that the law would say you're committing a crime of having too much beer and you can't use your gun? Of course not.

After the Defense finished its closing arguments, the prosecutor said the following in her rebuttal argument:

> [Defense Counsel] talked about the presumption a little bit and I don't want you guys to get confused because it is kind of a confusing area of the law, because you heard a lot about that, right? [Appellant] is a victim of aggravated robbery...
>
> Here's the problem. *He cannot use deadly force to protect against the imminent commission of aggravated robbery if he's also committing another crime. You can't do it.* And we

know at the very least, right, he's committing aggravated assault. Deadly conduct, illegal possession of a firearm, delivery of marijuana, possession of marijuana, the list goes on. Right?

So he doesn't get it. He doesn't get there. There was no imminent commission of aggravated robbery because if taking his story as the truth, means the robbery was over. I don't think it's the truth, but we'll just give him the benefit of the doubt. Right?

*If it's over, he doesn't get self-defense. Well, let's assume it's still going on in some world. He doesn't get it because he's committing other crimes.* So it all goes back to: Well, I don't think I did it. But if you figure it out and you caught me and I did it, this is why I did it.

You can't use that excuse. It doesn't apply to him.[7]

At that point, defense counsel objected to the State's argument. The judge overruled the objection, and the jury convicted Appellant. At the punishment stage of trial, the jury found that Appellant acted under the influence of sudden passion arising from an adequate cause[8] and sentenced him to 18 years in prison.

## C.    The Appeal

Agreeing with Appellant, the court of appeals held "that the presumption of reasonableness was not applicable and should not have been included in the jury

---

[7]Emphasis added.

[8]  *See* TEX. PENAL CODE § 19.02(d).

charge because it [was] undisputed that he was engaged in criminal activity—namely, a drug deal—when he shot Ose."[9] The court of appeals then weighed the *Almanza* factors: the entire jury charge, the arguments of counsel, the state of the evidence, and any other relevant information revealed by the record.[10]

The court of appeals held that the first factor weighed against a finding of harm because the abstract portion of the jury charge correctly stated the law on the presumption,[11] the application portion of the charge did not refer to it at all, and the application section is what authorizes conviction.[12] The court of appeals also found that the evidence factor weighed against a finding of harm because there was "more than sufficient evidence" for the jury to find that Appellant did not act in self-defense—Appellant arranged the time and place for the drug deal, came armed, brought an accomplice, and followed Ose as Ose attempted to flee, and an eyewitness testified that Appellant appeared calm and appeared to high-five or fist-

---

[9] *Cuevas v. State*, —S.W.3d—, No. 14-22-00561-CR, 2024 Tex. App. LEXIS 2612, 40 (Tex. App.—Houston [14th Dist.] April 16, 2024).

[10] *Id.* at 41-47; *see Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g).

[11] *Cuevas*, 2024 Tex. App. LEXIS 2612, at 41.

[12] *Id.* at 42 (citing *Crenshaw v. State*, 378 S.W.3d 460, 466 (Tex. Crim. App. 2012)).

bump Egbe after the shooting.[13] The court of appeals found that the argument

factor weighed slightly in favor of harm because the State misstated the law on the

presumption of reasonableness but that the harm was ameliorated by Appellant

when he addressed the prosecutor's misstatements of the law in his closing.[14] And

the court of appeals held that the record does not reveal any other information,

such as jury notes indicating it was confused about the charge and did not weigh

this factor.[15]

In light of the four factors, the court of appeals found that the error in the

jury charge was harmless because defense counsel corrected the prosecutor's

misstatement of the law, the court instructed the jury to follow the law set out in

the charge, and the charge did not contain a misstatement of the law, so Appellant

identified a purely theoretical harm from the erroneous inclusion of the

presumption instruction.[16]

---

[13]*Id.*

[14]*Id.* at 46.

[15]*Id.*

[16]*Id.* at 47. We note that Appellant also complained to the court of appeals about the State's *voir-dire* comments relating to the presumption. Apparently assuming error, the court of appeals concluded that there was no harm. *Id.* at 15 ("Even if we were to agree with appellant's characterization of the prosecutor's comments, we apply a harmless error analysis to a prosecutor's alleged misstatements of law during voir dire. Here, the record shows that defense

The dissent in the court of appeals found that the first factor was neutral because, while the jury charge did not repeat the presumption in the application paragraph, the presumption language was used throughout the trial to prevent the use of self-defense.[17] The dissent agreed that the arguments-of-counsel factor weighed in favor of harm but also noted that the State's argument came on rebuttal, leaving Appellant no opportunity to refute the State's argument.[18] The dissent averred that the third factor was neutral at best because there was evidence to suggest that Appellant's version of the story was true.[19] For the last factor, the dissent noted that the State's "misunderstanding of the law started with voir dire, and continued through opening and closing statements" and was aggravated by the fact the judge agreed with the State.[20]

## II. ANALYSIS

counsel had the opportunity to examine the venire panel about self-defense and to correct any misstatement of law, including the reasonable-belief presumption or the criminal-activity caveat, and the record further shows that defense counsel did precisely that.") (citations, including references to TEX. R. APP. P. 44.2(b), omitted).  The dissent claims that Appellant did not complain about the court of appeals's resolution of the voir-dire issue in his petition, but our reading of his petition suggests that he did.  Nevertheless, we did not grant review of that issue.

[17]*Id.* at 63 (Christopher, C.J., dissenting).

[18]*Id.* at 64.

[19]*Id.* at 64-65.

[20]*Id.*

**A.    Self-Defense Statute and Applicable Law**

This case revolves around Section 9.32 of the Texas Penal Code.

Appellant's defensive theory was that he acted in self-defense when faced with

deadly force by Ose during a marijuana deal gone wrong. Section 9.32, which

details when deadly force in defense of persons is justified, states the following:

> (a) A person is justified in using deadly force against another:
>
>> (1) if the actor would be justified in using force against the other under Section 9.31; and
>>
>> (2) when and to the degree the actor reasonably believes the deadly force is immediately necessary:
>>
>>> (A) to protect the actor against the other's use or attempted use of unlawful deadly force; or
>>>
>>> (B) to prevent the other's imminent commission of aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery.[21]

The presumption involving the use of deadly force has several elements, but

we need only concern ourselves with the last element:

> (b) The actor's belief under Subsection (a)(2) that the deadly force was immediately necessary as described by that subdivision is presumed to be reasonable if the actor:
>
> . . .

---

[21]TEX. PENAL CODE § 9.32(a).

(3) was not otherwise engaged in criminal activity, other than a Class C misdemeanor that is a violation of a law or ordinance regulating traffic at the time the force was used.[22]

When a rule or statute requires an instruction that is "the law applicable to the case," the trial court must instruct the jury accordingly.[23] In general, issues that do not involve the elements of the offense and are not applicable in every case constitute law applicable to the case only if raised by the evidence.[24] In particular, the issue of the existence of a presumed fact must be submitted to the jury "unless the court is satisfied that the evidence as a whole clearly precludes a finding beyond a reasonable doubt of the presumed fact."[25] Thus, when the evidence conclusively establishes that the defendant was engaged in criminal activity at the time he used

---

[22]TEX. PENAL CODE § 9.32(b)(3).

[23]*Oursborn v. State*, 259 S.W.3d 159, 180 (Tex. Crim. App. 2008).

[24]*Sakil v. State*, 287 S.W.3d 23, 26 (Tex. Crim. App. 2009) ("But what criteria qualify a statement of law as being 'applicable to the case'? Some information, such as the elements of the charged offense, must appear in the jury charge and is without question 'the law applicable to the case.' But a Section 8.04(a) instruction need not appear in every jury charge, and therefore, there is no *sua sponte* duty to instruct the jury on that issue, but the judge may do so, if the question of voluntary intoxication applies to the case. We have stated that a Section 8.04(a) instruction is appropriate if there is evidence from any source that might lead a jury to conclude that the defendant's intoxication somehow excused his actions...We disagree with the court of appeals's conclusion that there was no evidence of intoxication sufficient to raise an issue under Section 8.04(a). We hold that it was not error to include the voluntary intoxication instruction in the jury charge...") (citations omitted); *Cf. Solomon v. State*, 49 S.W.3d 356, 368 (Tex. Crim. App. 2001) (Accomplice as a matter of fact instruction "was erroneous because the issue was not raised by the evidence.").

[25]TEX. PENAL CODE § 2.05(b)(1).

deadly force, the presumption of reasonableness is not the law applicable to the case.[26]

Because the court of appeals found error, and the State did not file a petition from that adverse determination, we assume error.[27] Since the error in submitting the presumption was objected to, the record need only show "some harm."[28] In the context of *Almanza*, "the presence of *any* harm, regardless of degree, which

---

[26]*Cf. Villareal v. State*, 453 S.W.3d 429 (Tex. Crim. App. 2015) (finding presumption inapplicable based on uncontroverted evidence that the defendant was engaged in the commission of a crime).

[27]The State's brief seems to suggest fleetingly that the inclusion of the presumption might have been proper, but it made no clear argument and focused its discussion on harm. In any event, it failed to bring the issue before us via a petition for discretionary review. *See Blasdell v. State*, 470 S.W.3d 59, 62 n.4 (Tex. Crim. App. 2015) (This Court refused to address one of the State's claims because "we did not grant review of that issue. Moreover, the State did not properly raise the...issue in a cross-petition for discretionary review.") (also citing and quoting *Keith, infra*); *Keith v. State*, 782 S.W.2d 861, 863 n.4 (Tex. Crim. App. 1989) ("[W]here the State intends to claim an error by the Court of Appeals' rejection of an argument, that claim should be presented to this Court in a petition for discretionary review or a cross-petition for discretionary review.").
     The dissent takes us to task for assuming error. But assuming error after it has been decided in a lower appellate court—and not complained about in a proper manner—is not the same thing as assuming error when the issue of error has never been addressed. The dissent nevertheless urges us to grant review of the issue of error on our own motion. We note, however, that Appellant's commission of a crime during the events at issue was never in dispute at trial. Both parties explicitly told the jury during closing arguments that Appellant was committing a crime during the shooting. In fact, the prosecutor pointed to several crimes—including the possession and delivery of marijuana and the illegal possession of a firearm. Given this trial background, we see no compelling reason to go the extra mile to grant review of an error issue that has not been properly raised before us.

[28]*Elizondo v. State*, 487 S.W.3d 185, 204 (Tex. Crim. App. 2016).

results from preserved charging error, is sufficient to require a reversal of the conviction. Cases involving preserved charging error will be affirmed only if *no* harm has occurred."[29] Even "the less exacting standard of 'some' harm still requires that the record reveal 'actual,' and not merely 'theoretical' harm."[30]

In determining whether Appellant suffered "some harm," we must look to (1) the jury charge as a whole, (2) the arguments of counsel, (3) the entirety of the evidence, and (4) any other relevant factors present in the record.[31]

### B.    The *Almanza* Factors

### 1.    Error in Light of the Entire Jury Charge

As we explained earlier, we assume that the presumption was inapplicable because it was not raised by the evidence. However, the presumption correctly stated the law, and if it were correctly interpreted, the jury would simply conclude that the presumption did not apply and proceed to determine whether Appellant *actually*, rather than *presumptively*, acted in self-defense. Ordinarily, we presume

---

[29] *Arline v. State*, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986) (emphasis in original).

[30] *French v. State*, 563 S.W.3d 228, 236 (Tex. Crim. App. 2018).

[31] *See Almanza*, 686 S.W.2d at 171.

that the jury has understood and followed the instructions given.[32] And an

inapplicable but legally correct abstract instruction that purports to benefit a

defendant (as the presumption-of-reasonableness instruction did) would generally

not harm a defendant.[33] But there is one way to misuse the presumption-of-

reasonableness instruction that could cause serious harm: if the presumption were

conflated with the ability to act in self-defense at all, that misconstruction could be

devastating to a defendant's self-defense claim. As we shall see in discussing other

factors, the prosecutor in the present case repeatedly advocated this

misconstruction to the jury.

The parties and the court of appeals have suggested that the presumption

was not included in the application paragraph. If that suggestion were a complete

and accurate characterization of the jury charge, that fact would weigh in the

State's favor because we have said that the application paragraph is the "heart and

soul of the jury charge,"[34] and we have suggested that "inclusion of a merely

[32]*Crenshaw*, 378 S.W.3d at 467.

[33] *Cf. Druery v. State*, 225 S.W.3d 491, 497-98 ("Also, if Pitts and Harris are not accomplices, then the trial judge's instruction regarding accomplice witnesses as a matter of fact was superfluous and did not harm Druery. Indeed, such an instruction could only benefit him because it allowed the jury to require corroboration of the witnesses' testimony if it believed that the witnesses were accomplices to Rome's murder.").

[34]*Vasquez v. State*, 389 S.W.3d 361, 367 (Tex. Crim. App. 2012).

superfluous abstraction, therefore, never produces reversible error in the court's charge because it has no effect on the jury's ability fairly and accurately to implement the commands of the application paragraph or paragraphs."[35] However, the application paragraph's phrase "reasonably believing" effectively incorporated the abstract presumption by reference.[36] The abstract instruction on the presumption was essentially a partial explanation on how to determine whether Appellant's belief was reasonable and was thus logically linked to the application paragraph. Consequently, the absence of a dedicated application paragraph for the presumption does not significantly cut against a finding of harm. The entirety-of-the-charge factor weighs, at most, slightly in favor of the State.

### 2. Other Relevant Factors Present in the Record

We discuss this factor next because it involves some proceedings earlier in the trial in which the State previewed its inaccurate position on the law. In *voir dire*, the State used examples and included veniremembers in hypotheticals to explain that Appellant was not legally entitled to self-defense. The State's misstatements

---

[35]*Plata v. State*, 926 S.W.2d 300, 302-03 (Tex. Crim. App. 1996), *overruled on other grounds by Malik v. State*, 953 S.W.2d 234 (Tex. Crim. App. 1997).

[36]*See Vasquez*, 389 S.W.3d at 367-68 (discussing that holding in *Marvis v. State*, 36 S.W.3d 878 (Tex. Crim. App. 2001) that the words "acting together" were sufficient, at least absent objection, to incorporate an abstract definition on the law of parties).

of the law were further exacerbated by the slide show it displayed to the jury. Before ever reading the jury charge, the state primed the jury, repeatedly, that a defendant may not claim self-defense if he was also engaged in the commission of a crime. The court of appeals claimed that defense counsel had the opportunity to correct any misstatement of law and that defense counsel did exactly that. This overlooks the fact that, when the defense did attempt to correct misstatements of law, the judge either overruled the defense's objections or sustained the State's objections.

In his opening statement, defense counsel attempted to ameliorate the harm that the State's explanation of self-defense during *voir dire* caused. Near the beginning of defense counsel's opening statement, counsel said the following: "And unlike what you heard in voir dire about self-defense not being available, if someone is committing a crime, self-defense is available if someone is committing a crime." The State objected "as to improper opening and also a misstatement of the law"[37] which the judge sustained.

---

[37]While defense counsel's opening statement may have included an improper argument about the law, it was done to correct the misstatements of law by both the prosecutor and the judge. This could have been an opportunity for the judge to mitigate any harm caused in *voir dire*.

The judge repeatedly overruled defense objections to the State's misstatements of the law and sustained the State's objections to defense counsel when the defense would attempt to correct misstatements of the law. In doing so, the trial court consistently put the stamp of judicial approval on the State's misstatements of law.[38] Every defense objection was a missed opportunity for the trial judge to clear up the law on self-defense and the fact that the State was conflating the presumption with the rule on self-defense.

In addition, in the punishment phase of trial, the jury made a finding of sudden passion. This finding suggests that the jury believed Appellant's story because that story was the only basis for a sudden-passion finding. Indeed, in punishment closing arguments, both Appellant and the State told the jury that it would have to believe Appellant's version of events to make the finding. Defense counsel told the jury that Appellant's reaction to hearing Ose cock his gun, "that immediacy of it, that's sudden passion." The State explained, "What he's really saying is: Hey, Jury, I know you didn't buy my self-defense but maybe if I call it sudden passion, you'll buy that right? Y'all are very intelligent." The jury's finding of sudden passion combined with its rejection of self-defense suggests that

---

[38] *See Burke v. State*, 652 S.W.2d 788, 790 (Tex. Crim. App. 1983).

it believed Appellant's story but also believed the State's interpretation of the presumption issue and therefore thought its hands to be tied on the issue of self-defense. The other-relevant-information factor weighs heavily in favor of harm to Appellant.

### 3. The Entirety of the Evidence

The court of appeals held that this factor also weighed against a finding of harm because the evidence of Appellant's guilt was overwhelming. However, as the dissent in the court of appeals explained, the evidence was not as lopsided as the majority suggested. The testimony of Appellant and Egbe, if believed, would entitle Appellant to a self-defense finding. And other evidence provided at least some support for that testimony. The drug sale—that Appellant organized—took place in public with witnesses all around as evidenced by those who testified at trial. Appellant and Ose were in a public parking lot, in front of a restaurant. If Appellant went to this drug-buy intending to inflict violence, why would he pick this area? Also, Appellant left his cell-phone and the marijuana he intended to sell in Ose's vehicle—suggesting that his original intent was to sell the marijuana and that the altercation was a surprise. And, Richey testified that Ose planned to rob someone with the same first name as Appellant. Richey's testimony also

contradicted the court of appeals' assertion that the only evidence suggesting self-defense came from Appellant and his cohort. The fact that Appellant brought a firearm to a drug deal was not conclusive evidence that he intended to start a firefight; drug dealing is a dangerous activity and bringing a firearm for protection is an unfortunate reality of that activity.[39] We hold that this factor weighs at least moderately in favor of harm.

### 4. Arguments of Counsel

As laid out fully above, the State doubled down on the seed it planted in *voir dire* when the prosecutor argued in rebuttal, "[Appellant] cannot use deadly force to protect against the imminent commission of aggravated robbery if he's also committing another crime." Soon after this, the prosecutor doubled down again:

> He doesn't get it because he's committing other crimes.
> So it all goes back to: Well, I don't think I did it. But if
> you figure it out and you caught me and I did it, this is
> why I did it.
>
> You can't use that excuse. It doesn't apply to him.

---

[39] *Plummer v. State*, 410 S.W.3d 855, 859 (Tex. Crim. App. 2013) ("The nature of the illegal drug trade invites the possibility of violence and encourages drug dealers to carry deadly weapons to protect themselves and their inventory."); *United States v. Wiener*, 534 F.2d 15, 18 (2nd Cir. 1976) (discussing that drug dealers keep firearms "as tools of the trade almost to the same extent as they keep scales, glassine bags, cutting equipment, and other narcotics equipment").

This last argument punctuated the State's practice at essentially every point in the trial. When defense counsel objected at this point, the judge again overruled Appellant's last attempt to correct the State's misstatements of law.[40]

The court of appeals found that the harm of the State's argument was ameliorated by defense counsel when he attempted to cure the State's misstatement of the law. But the prosecution's remarks about the presumption came on rebuttal—the last words the jury would hear and to which the defense could not respond. And the trial judge, as in every prior instance when the issue arose, ruled in favor of the State.

Though the jury charge correctly recited the presumption language, the prosecutor misused this portion of the charge in precisely the way to which it was susceptible by conflating it in a way that stripped it of its meaning. The only thing that might prevent this factor from weighing heavily in favor of harm is the fact that the defense's objection was a little late. However, the trial judge had been consistently overruling these types of objections, and this objection was made early enough for the judge to issue a curative instruction. We hold that this factor weighs at least moderately in favor of harm.

---

[40] *See Burke*, 652 S.W.2d at 790.

### 5. Weighing the Factors

After weighing all of the *Almanza* factors, one factor weighs heavily in favor of harm, two factors weigh at least moderately in favor of harm, and one factor weighs slightly against a finding of harm. These factors showed the State previewing how it will misuse the presumption in *voir dire* and opening statements and then actually misusing the presumption in its closing argument on rebuttal. While the irrelevant instruction did not incorrectly recite the abstract law relating to the presumption, the State consistently told the jury that the instruction meant that Appellant had no defense. As a result, Appellant was virtually stripped of his defensive theory. We conclude that he suffered at least "some harm."[41]

This Court addressed a similar issue in *Reeves v. State*, where a jury charge erroneously included an instruction on provocation even though it did not apply to the facts of the case.[42] The State used a provocation instruction to claim that "[Reeves] is not justified in claiming self-defense," which was contrary to the law.[43] Much like Appellant's case, the State used an irrelevant instruction to

---

[41] *Elizondo*, 487 S.W.3d at 204.

[42] *Reeves v. State*, 420 S.W.3d 812, 820 (Tex. Crim. App. 2013).

[43] *Id.*

highlight the arguments it made to the jury.[44] The only differences between these two cases are (1) a provocation instruction could only harm a defendant's case whereas a presumption of reasonableness instruction would generally tend to benefit a defendant, and (2) the provocation instruction in *Reeves* also appeared in the application section of the charge. However, as in *Reeves*, the State in this case weaponized the instruction at issue to improperly limit the right to self-defense.[45] This Court noted in *Reeves* that: "(1) the State misspoke about the law of provocation and then told the jury to pay careful attention to the erroneous instruction, and (2) the evidence concerning self-defense was hotly contested and [A]ppellant's version of events was, at a minimum, plausible, and, if believed, exonerating."[46] Those two types of factors were also present here. In this case, the State and the trial judge continuously impressed misstatements of the law on the jury, and "the evidence of guilt was not so overwhelming that the erroneous...

---

[44]*Id.* (discussing the fact the prosecutor called the jury's attention to the erroneous instruction in the charge which "emphasized the improper instruction and brought it to the forefront of the juror's minds")

[45]*Cf. Rodgers v. State*, 550 S.W.3d 190 (Tex. Crim. App. 2018) (An error in the jury charge was aggravated by the State's misstatements of the law.).

[46]*Reeves*, 420 S.W.3d at 821.

instruction was harmless."[47] In addition, the jury's finding of sudden passion further buttresses these factors weighing in favor of harm.

### III. CONCLUSION

Because we hold that Appellant suffered at least some harm from the inclusion of the presumption instruction, we reverse the judgment of the court of appeals and remand the case for a new trial.

Delivered: April 2, 2026

Publish

---

[47] *See Id.* at 820.

**Appendix A**

# Deadly Force is Reasonable IF:

◈ Other person is:

  ◈ Entering (or being removed from) home, business or vehicle unlawfully & w/deadly force

  ◈ Committing or attempting to commit – aggravated kidnapping, murder, sexual assault, aggravated robbery

### *AND*

◈ Didn't start/provoke the encounter

### *AND*

◈ Was NOT engaged in criminal activity

# Use of Force <u>NOT</u> justified...

1. In response to <u>words</u> alone

2. If the defendant provoked the use of deadly force (AKA: Started the fight)

3. After the threat is <u>over</u>

4. Not just because you are angry

5. If you are committing a crime

***Same for use of DEADLY FORCE***